DAVID F. GOODFELLOW'S EXECUTORS, Respondents, v. JAMES MEEGAN, Appellant.

*Bailment—Negligence.*—In an action to recover for the pasturing of cattle, some of which were not returned by the bailee, it is incumbent upon the plaintiff to prove that he used the degree of diligence required of him by his contract. The degree of diligence required depends upon the terms of the contract.

*Evidence.*—It was improper to permit witness to state that it was *not* the custom to make contracts of a particular character, which were not illegal and which the parties were competent to make.

### Appeal from St. Louis Law Commissioner's Court.

On the 12th May, 1859, two suits were brought against James Meegan, before Peter W. Johnstone, a justice of the peace ; one in favor of David F. Goodfellow's executors, for thirty-five dollars and forty-five cents, for grazing oxen from July 28, 1858, to September 18, 1858 ; and the other suit was in favor of Mary G. Goodfellow, for eleven dollars and fifty five cents, for grazing oxen from September 18, 1858, to October 21, 1858. James Meegan filed before the said justice an offset in each case—in the first suit as above, for seventy dollars, being the alleged value of two oxen, delivered to said Goodfellow in his life-time, which said Goodfellow was to pasture and redeliver to said Meegan, but which were not returned, though demanded ; and in the last named suit, an offset for thirty-five dollars, for one ox lost and not returned or accounted for of oxen mentioned in plaintiff's account. By agreement of all the parties, the two cases were consolidated and merged into one. The case was tried before the justice, and judgment rendered against James Meegan for forty-seven dollars. James Meegan appealed to the Law Commissioner's Court, where the case was tried at the August term, 1859, and resulted in a judgment against said Meegan for thirty-five dollars and forty-five cents.

David F. Goodfellow died September 18, 1858, leaving a last will and testament, in and by virtue of which he appointed John W. Burd and William C. Jamison his executors and

devisees, and bequeathed all his property to said Burd and Jamison as trustees, for the benefit of his widow, the said Mary G. Goodfellow, during her natural life, with remainder to his children. After his death, his widow continued to reside and carry on the farm, in the county of St. Louis, about six miles from this city.

There was evidence proving plaintiff's case.

The defendant attempted to show a special contract between Goodfellow and Meegan, made on his behalf by one James A. Husbands, who testified that Goodfellow told witness that he had two pastures; and showed one, on the left hand side of the road, where Goodfellow said he would pasture at the owner's risk; but that if witness would put the cattle in the pasture on the right hand side, he, Goodfellow, would see that the cattle were there whenever they should be called for. Witness understood that if the cattle were lost or stolen, Goodfellow would pay for them, but did not know what was Goodfellow's understanding. The price to be paid for pasturing was two dollars a head a month. It appeared that three of the oxen broke down the fence and got away.

In rebuttal, Michael Redman, a witness for plaintiff, was called and asked the following questions: What the custom was in regard to pasturing cattle in the vicinity where these cattle were pastured; and who usually took, according to custom, the responsibility of keeping the cattle safely? Whether the person pasturing ever undertook to do it? To which defendant objected, on the ground that a special contract had been proved; which objection was overruled, to which defendant excepted. Witness stated that, in the neighborhood, it was not the custom of pasturers to become responsible for cattle; that he never knew of cattle being pastured in that way, at the rate of two dollars a head per month, in that vicinity. Witness was then asked whether the cattle in question were not breachy, and other questions to the same effect, to which defendant objected as incompetent in view of the contract proved by defendant. The court

overruled the same, to which defendant excepted. Witness then testified that some of the cattle were breachy; that he saw two of them, on two occasions, break down the fence of the pasture, and that he called any cattle breachy that would break down any fence.

The defendant asked the following instructions:

1. That if the court, sitting as a jury, believe this was a common contract of pasturage, with no special understanding as to the safe keeping, then this is an ordinary contract of bailment for hire, and Goodfellow was, by law, bound to ordinary care, and liable for ordinary negligence. And if the court, sitting as a jury, believe that the cattle were lost during the bailment, then, as plaintiffs sue for the price of the bailment, they are bound to show, before they can recover, that the lost cattle could not have been preserved by the exercise of ordinary care and diligence.

2. That if the court, sitting as a jury, believe that it was agreed between Goodfellow and defendant's agent that the cattle should be put, and in pursuance of that agreement the cattle were put by defendant's agent, into a particular specified pasture; and that, afterwards, the pasture was changed without the consent of defendant, and the cattle put into another pasture, and that some of these cattle were missing and not returned to the defendant, then plaintiff cannot recover in this action.

3. That if the court, sitting as a jury, believe that, at the time the agreement was being made, Goodfellow said to the defendant's agent that he, Goodfellow, would see that the cattle were forthcoming when called for, or words to that effect, he thereby bound himself, as a bailee, to use the highest degree of care and diligence; and if the court, as a jury, believe that some of the cattle were not forthcoming, but were lost to the defendant, then the burden of proof is on the plaintiff to show that such cattle could not have been made forthcoming by the exercise of the highest degree of care and diligence.

4. That if the court, sitting as a jury, believe that, at the

time the contract for pasturage of the cattle was being made, defendant's agent drew attention to the safe keeping of the cattle, and Goodfellow said to the defendant's agent that he, Goodfellow, would see the cattle were there in the pasture when called for, if they were put in the right hand pasture ; and that under agreement made at that time the cattle were put in the right hand pasture, then this amounted to an understanding on the part of Goodfellow to have the cattle in the pasture when called for, except in case of their death, or loss from some cause beyond human care and precaution.

The court refused to give said instructions, to which defendant excepted.

The plaintiff asked the following instruction :

" The court declares the law to be, that if the plaintiff took the cattle of the defendant for the purpose of pasturing the same, and that he did so pasture the said cattle, and that the sum charged therefor is reasonable, the plaintiffs are entitled to recover."

The court refused to give said instruction.

The court, on its own motion, gave the following instruction :

" The account herein filed, of Mary S. Goodfellow against James Meegan, cannot be regarded as considered by the court, as a jury, in the decision of this cause."

*C. S. Hayden,* for appellant.

I. The agistor sues on a contract which binds him, like other bailees for hire, to ordinary care, and makes him responsible for ordinary negligence. It being shown that three of the cattle were lost, the plaintiff was bound to prove that they were not lost by his negligence. (Rey v. Toney, 24 Mo. 600.)

II. In regard to the admission of illegal testimony, no argument can be as strong as a statement of the facts. In contradiction of defendant's evidence to prove a special contract—to permit plaintiffs' witnesses to testify that it was *not* the custom to make special contracts at all, and above all such contracts, was illegal.

*Lackland, Cline* and *Jameson,* for respondent.

I. There was no special contract proven by appellant.

II. The evidence of a custom in the vicinity was competent to rebut the evidence tending to show a special contract.

III. It was incumbent upon the defendant to prove the negligence of the plaintiff. (Rey v. Toney, 24 Mo. 600 ; Foot v. Starrs, 2 Bart., S. C., 329 ; 2 Story on Cons., § 742.)

BATES, Judge, delivered the opinion of the court.

The cattle having been bailed by Meegan to Goodfellow, to be pastured by him for hire,—in this suit for the hire, it having been charged and proved that some of the cattle were not returned by Goodfellow to Meegan, it was incumbent upon Goodfellow's executors to show that the loss of the cattle was not occasioned by his default. In other words, that he had used the degree of diligence required of him by his contract. The degree of diligence would depend upon the terms of the contract; but, whether it be ordinary or extraordinary, it was the burden of the plaintiffs to show that it was exercised. By the refusal of all of the instructions asked by the defendant, the court below seems to have assumed that Goodfellow was in no event responsible for the safe keeping of the cattle, even though they might have been lost by his gross negligence. This was error.

As to the proof of what were the terms of the contract, they might be proved by direct evidence; or, if it be proved that the contract was made so general as not to specify the particular terms from which the liabilities of the parties result, perhaps evidence might be given of a common understanding and usage, known to the defendant, that such general contracts implied certain specific terms. As the evidence of custom was given in this case, it was improper. It was only that it was *not* the custom to make certain contracts which were not illegal, and which the parties were competent to make. Such testimony is no evidence that a contract of that unusual character had not been made in this instance.

Judgment reversed and cause remanded. Judges Bay and Dryden concur.