E. A. CASEY, Respondent, v. JOSEPH T. DONOVAN, Appellant.

St. Louis Court of Appeals, March 10, 1896.

1. Pleading: VARIANCE. No variance is fatal under our code, unless it amounts to a failure of proof; and such failure ensues when the cause of action is unproved not merely in some particular but in its entire scope and meaning.

2. Agistment: BURDEN OF PROOF: INSTRUCTIONS. In an action for the loss of a horse on the ground that it was placed in the custody of the defendant for training, and that it was killed through the negligence of the defendant's servant while being trained by him, the plaintiff has the burden of proving the alleged negligence; and, while a *prima facie* presumption of such negligence arises from the failure of the bailee to return the horse, it is, nevertheless, error for the court to instruct the jury that the burden is upon him to show that his servant exercised ordinary care in training the horse at the time it was killed.

3. ———: PRINCIPAL AND AGENT: DOUBLE AGENCY. A person may be the agent of two different parties in the same undertaking, when the respective interests of these parties do not conflict, and when loyalty by the agent to one of them is not a breach of his duty to the other. And *held*, under this rule that, where a horse was placed in the custody of a trainer for the purpose of being trained and further of being entered and driven in races, the trainer could as to the first of these purposes be the representative of a bailee of the owner and as to the other be the representative of the owner himself.

*Appeal from the Pike Circuit Court.*—HON. REUBEN F. ROY, Judge.

REVERSED AND REMANDED.

*C. P. & J. D. Johnson* for appellant.

*Nat C. Dryden* and *T. J. Rowe* for respondent.

ROMBAUER, P. J.—This is an action to recover damages for breach of a contract of bailment. The plaintiff recovered a verdict for $1,141.66 2-3. The amount indicates that it is a compromise verdict, although it is not challenged on that account. The defendant complains on this appeal of fatal variance between the allegations of the petition and the evidence adduced to substantiate them, and of the ruling of the court on instructions given and refused. The merits of these complaints can not be discussed, without setting out at some length the pleadings and evidence and the instructions given and refused by the court.

The petition is as follows:

"Plaintiff states that, at the times hereinafter mentioned, he was the owner of a certain well-bred, fast and handsome, sound and gentle gelding, a trotting horse, 5 years old, and of the value of $5,000, and that on or about the —— day of April, 1891, the plaintiff delivered said gelding, which was called 'Mark Twain,' to the defendant, at the county of Montgomery in the state of Missouri, to be kept, fed, cared for, driven and trained as a trotting horse for the plaintiff by the defendant, his agents and servants, for hire, and that on or about said day defendant received said trotting gelding, Mark Twain, from plaintiff, and then and there, for a price and consideration thereafter to be mutually agreed on by plaintiff and defendant, the defendant undertook to safely keep, feed, care for, drive and train said gelding, Mark Twain, as a trotter, and to safely deliver said gelding to plaintiff at the close of the trotting season of 1891.

"The plaintiff says that the defendant, his ser-

vants and agents, did not safely keep, feed, care for, drive and train said gelding, Mark Twain, and safely deliver him to the plaintiff at the close of the trotting season of 1891, pursuant to his said undertaking, but that on the contrary, the defendant, his servants and agents, so kept, handled, drove and trained, the said gelding that they suffered and permitted the said gelding, Mark Twain, to be killed at Louisiana, Missouri, on the —— day of August, 1891, and before the close of said trotting season of 1891, so that the said gelding has been wholly lost to plaintiff, to his damage in the sum of $5,000, for which, and his costs in this behalf, he prays judgment against defendant.''

The defendant's answer first denies the contract as stated in the petition, claiming that plaintiff put the horse in the custody of one Mills, who was to keep, train, handle and drive it with certain other horses of the defendant, and then proceeds as follows:

''The defendant states further that on or about the fifteenth day of June, 1891, the defendant sent several of his own horses in charge of said Mills to be by the latter entered and driven in certain trotting races, which were to be trotted during the season of said year at the city of Alton, in the state of Illinois, and the cities of Hannibal and Louisiana and Mexico, and other cities, in the state of Missouri; that said gelding, Mark Twain, up to said date was being trained by the said Mills on defendant's said farm as aforesaid, and that at plaintiff's special instance and request, defendant permitted, authorized said Mills to take with him and care for and drive in the said races said 'Mark Twain,' the same as he cared for and drove defendant's said horses; that, at plaintiff's special instance and request, said Mark Twain was entered to trot at the said several cities and was by the said Mills trotted at two races, one at the city of Alton, and the other at

the said city of Hannibal; that, in pursuance of said request of plaintiff, said horse was by the said Mills taken to the said city of Louisiana for the purpose of being entered and trotted by the said Mills, and was entered in a race on the track of the Fair Association at said city on or about the eighth day of August in said year; that the said Mills then and there had the said horse, Mark Twain, hitched to a sulky upon the said track preparatory to and for the purpose of trotting him in said race, and while driving him on said track another horse, then and there being driven on said track, collided with plaintiff's said horse, by means whereof the shaft of the sulky to which the other horse was hitched penetrated the shoulder of plaintiff's said horse, thereby causing his death, and that said collision was not occasioned by the negligence of the said Mills or of the defendant.''

''And defendant states further that the said agreement and the said injuries to said horse, both hereinbefore specified and set forth, is the same agreement and injuries as that mentioned and pleaded in plaintiff's said amended petition, and that the said Mills, in and while entering and driving plaintiff's said horse in the said several races and in the said race at Louisiana, Missouri, acted at the direction, instance and request, and as the agent of plaintiff, and not at the instance and request or as the agent of the defendant.''

The evidence tended to show the following facts: Mills was in defendant's employ as a horse trainer, and the plaintiff placed his horse on the defendant's farm under a contract with defendant that Mills should train the horse. The horse, ''Mark Twain,'' was thus kept and trained until the summer of 1891. In the spring of 1891 the plaintiff left for Europe, and consented that his horse might be sent with defendant's horses on the racing circuit in the summer, provided one Farnan, an

employee of the defendant in whom plaintiff had confidence, went along on the circuit.  On June 16, 1891, Mills was about to start out with the defendant's horses on the racing circuit, and was anxious to take "Mark Twain" along.  The defendant would not consent to his taking the plaintiff's horse, unless the plaintiff gave his consent, and on June 16, 1891, he cabled to the plaintiff as follows:

"Mills goes on circuit with horses.  Will Mark go or remain.  Answer."  On the next day the plaintiff replied to this cablegram as follows:  "Send Mark."

Farnan did not go along with the horses, nor is there any evidence that the plaintiff had any intimation that he would not go, except this.  Plaintiff admits that, prior to his departure for Europe, he was advised by the defendant that he would not be able to send Farnan on the circuit, as it was the busiest season of the year.  Mills took the horse along, and entered him in several races on the circuit.  Among these entries was one in Louisiana on the eighth of August.  Mills was on that day driving the horse there on the track, for the purpose of limbering him up preparatory to trotting him, when, owing to the fact that Mills was drunk, he so carelessly managed the horse that he drove it into the shafts of another sulky, which resulted in the killing of it.

The appellant complains of a fatal variance between the allegations of the petition and the evidence adduced in their support.  No variance is fatal under our code, unless it amounts to a failure of proof.  A failure of proof is defined to be a case wherein the allegation of the cause of action is unproved not in some particular only, but in its entire scope and meaning.  Revised Statutes, section 2238.  Here the petition charges that the horse was intrusted to the defendant to be trained and driven, and that the loss was due to the fact that

it was so driven by the defendant's servant as to be killed, and the evidence supports both these averments. There being evidence tending to show that the horse was delivered to the defendant in good condition, and a failure on his part to return it on demand, the plaintiff's evidence was sufficient to show a right or recovery. *Wiser v. Chesley*, 53 Mo. 547; *Arnot v. Branconier*, 14 Mo. App. 434; *Kincheloe v. Priest*, 89 Mo. 243.

Complaint is made of the following instructions given on behalf of plaintiff:

"If the jury believe from the evidence that the plaintiff put the horse, 'Mark Twain,' into the custody and care of defendant or his servant or agent to be kept, driven and trained, by one Mills for a price to be paid by plaintiff to defendant, and that said Mills at all the times in this instruction mentioned was the servant and agent of defendant in the care, handling and training and driving, of said horse, and that the defendant was to be paid by plaintiff for such care, training and driving, of said horse, and that the said horse was, on the twenty-ninth day of July, 1891, while so as aforesaid being driven by said Mills, and while in his, said Mills', care and control as aforesaid, killed, and that the said Mills did not then and there exercise ordinary care in driving said horse, but that the collision in which the said horse was killed was occasioned by the failure of said Mills to exercise such care to avoid said collision, then your verdict must be for the plaintiff for such sum as you may believe from the evidence was the reasonable market value of said horse at the time he was killed, not to exceed five thousand dollars ($5,000)."

"And by the term 'ordinary care,' as used in these instructions, is meant such care as a man of ordinary prudence would have exercised under the same circumstances. *And in this case the burden is upon the defend-*

*ant to show that he did exercise such ordinary care in driving such horse at the time he was killed.''*

We see no error in the first of these instructions. It states a correct proposition of law as applied to the hypothetical facts therein stated, and there was evidence to support it. But we can not see how that portion of the second instruction, which is italicized, can be upheld. The defendant under all the evidence was a hired bailee of the class known as agistors. As such he was bound to use ordinary care in keeping and using the horse, and responsible for the negligence of his servants in that behalf (Schouler on Bailments, sections 96 to 101), but he was not an insurer of the property intrusted to his care. It is true that the cases above cited properly hold that the bailor makes out a *prima facie* case by showing that property delivered to the bailee was not returned to him on demand. This is on the theory that the bailee's failure to account for the loss *in any manner* raises the presumption that the loss was due to his own negligence. This *prima facie* presumption in such a case satisfies the burden of proof which rests with the bailor. But the burden of the proof of the bailee's negligence always remains with the bailor. The instruction in effect tells the jury that the burden was upon the defendant to show that he was not guilty of negligence, for which we believe there is no warrant in any well considered case. The instruction applies to bailments of this character the law applicable to common carriers, who are insurers of goods. It overlooks the fact that, even in cases of common carriers, as soon as they show that the loss was the result of an excepted peril, the burden to show that the carrier's negligence supervened falls upon the shipper (*Witting v. Railroad*, 28 Mo. App. 103; affirmed in 101 Mo. 631), and the mere fact that, owing to the exclusive custody of the carrier, the show-

ing is difficult does not exonerate the shipper from the burden.   Under the italicized part of the above instruction, the bailee could not have exonerated himself *as a matter of law* by any showing of diligence, as the court held that the *burden of proof* was shifted to the defendant.   The burden of proof never shifts.

The court also erred in modifying the following instruction asked by the defendant:

"The jurors are instructed that, if they find from the evidence that 'Mark Twain' was intrusted to Mills *as plaintiff's agent* by directions of plaintiff, and that under such direction said Mills entered and drove said horse in certain races, and, while driving him in or preparatory to a race at the fair at Louisiana, said Mills drove said horse in collision with the horse 'Fly-Away,' occasioning the death of 'Mark Twain,' then the verdict should be for the defendant, although the jury may believe that the death of said 'Mark Twain' was occasioned by the intoxication of said Mills."

The modification consisted in inserting the italicized words (as plaintiff's agent) in the instruction asked by the defendant.   The defendant under the evidence was entitled to the instruction as he asked it, and its modification was misleading.   There was evidence tending to show that the plaintiff knew the habits and capacity of Mills, and also that the horse was intrusted on this special occasion to the exclusive custody and care of Mills upon plaintiff's request.   If so, the jury would have been warranted in finding that Mills was the plaintiff's agent on the occasion when the horse was injured.

Counsel for plaintiff is mistaken in the view, that there can be no double agency in such cases.   The distinguishing features of an agent are his representative character and his derivative authority.   Mechem on Agency, section 1; Bishop on Contracts, section

1027. Thus in *Nolte v. Hulbert*, 37 Ohio St., 445, it is properly said: "The maxim that no man can serve two masters does not prevent the same person from acting as agent for certain purposes for two or more parties to the same transaction, when their interests do not conflict, and where loyalty to the one is not a breach of duty to the other." In *Johnson v. Lindsay & Co.*, App. Cas. (1891) 371, it is well said: "The general servant of *A.* may for a time, or on a particular occasion, be the servant of *B.*" To the same effect is *Fitzsimmons v. Express Co.*, 40 Ga. 330. Such is the unquestioned law both on principle and authority.

On the same subject the defendant asked the following instruction, which the court refused:

"The jurors are instructed that the man Mills may have been the agent of plaintiff for the purpose of entering and driving the horse 'Mark Twain' in races on the trotting circuit, and at the same time the agent of defendant for caring for and training said horse."

This instruction fitly expressed the law as above stated, and should have been given.

All the judges concurring, the judgment is reversed and the cause remanded.