**Charles THUMMEL and Federal Deposit Insurance Corporation, a United States of America Corporation, as Receiver of the First National Bank of Chanute, Kansas, Plaintiffs–Respondents,**

v.

**Terry KREWSON, Defendant–Appellant.**

No. 15477.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 30, 1989.

J. Max Price, Salem, John D. Beger, Rolla, for defendant-appellant.

Dan L. Birdsong, Thomas, Birdsong, Clayton & Haslag, P.C., Rolla, for plaintiffs-respondents.

FLANIGAN, Judge.

Plaintiff Charles Thummel[1] brought this action against defendant Terry Krewson for defendant's allegedly improper failure to return to plaintiff cattle owned by plaintiff and placed by him in defendant's care

---

1. Co-plaintiff Federal Deposit Insurance Corporation is the receiver of an insolvent bank to which plaintiff Thummel made an assignment of a portion of "the proceeds of [plaintiff's] cause of action" under Counts I and III of the petition. Neither side questions the validity or effect of the assignment and both treat the dispute as if it were simply between Thummel and Krewson. Accordingly this court so treats it.

for feeding and growth. Count I of the petition dealt with the failure of the defendant to return 649 head of cattle on plaintiff's demand. Count II was an alternate statement of the claim contained in Count I and was abandoned. Count III dealt with the failure of defendant to return 11 Charolais bulls on plaintiff's demand.

The case was tried to a jury and both sides introduced evidence. At the close of all the evidence, the trial court sustained plaintiff's motion to direct a verdict in favor of plaintiff on the issue of liability on Count I, and that count was submitted on the issue of damages only. Count III was submitted on both the issues of liability and damages. The jury awarded plaintiff $190,700 on Count I and $6,600 on Count III. Defendant appeals.

In general, defendant's points on appeal are that the trial court erred (1) in directing a verdict for plaintiff on the issue of liability on Count I; (2) in denying defendant leave to amend its answer so as to plead, as a defense to Count I, defendant's exercise of ordinary care with respect to the cattle; and (3) in giving Instruction 11 dealing with the measure of damages on Count III. Other points raised by defendant need not be considered.

Point I and Point II, both dealing with Count I, will be considered together. For the reasons which follow, this court holds that both points are meritorious.

Plaintiff Thummel is a cattleman who lives in Kansas. Defendant Krewson owns and operates a livestock auction in Licking, Missouri. Defendant also runs cattle of his own and fattens cattle for other owners on several tracts of land, some owned and some leased by defendant.

In December 1982, plaintiff and defendant entered into an agreement, primarily unwritten, whereby cattle owned by plaintiff, selected and purchased by plaintiff's agent at defendant's auction, would be delivered to defendant for agistment. Defendant was to receive 40 cents for each pound each animal gained while under his care. Although the parties made a memorandum of a portion of the agreement, neither side claims that all the terms of the agreement were contained in it.

The memorandum made no mention of who would bear the loss in the event of injury or death of the animals. Plaintiff testified that defendant orally agreed to "take care of the death loss." Defendant testified that he made no such agreement and that, when the oral arrangements were made, "we had no conversation about the death loss."

Beginning in December 1982 and continuing into February 1984, plaintiff delivered to defendant, pursuant to the agreement, 3,576 head of cattle. The parties agree that by April 26, 1984, defendant had redelivered to plaintiff 2,927 head. Defendant's failure to return 649 head was the basis for plaintiff's claim under Count I.

On April 26, 1984, plaintiff requested delivery of a certain number of cattle, and when they were rounded up there was a "shortfall" of 134 head. Further inspection disclosed that 649 head were missing. Defendant told plaintiff that the loss was due to death of the cattle from the diseases of "red nose" and "hemophlous" (haemophilus?).

Plaintiff's evidence showed that the 2,927 head which were returned to plaintiff had an average gain of 82.57 pounds while they were in defendant's possession. Plaintiff's evidence showed that plaintiff had paid defendant $111,504.80 but had owed defendant, with respect to the 2,927 head returned to plaintiff, only $96,672.96, resulting in an overpayment by plaintiff of $14,831.84. Plaintiff's attorney asked the jury, in his final argument, to award plaintiff $14,831.84 plus the value of 649 head, the missing cattle, which he estimated to be $175,958.86.

The record does not indicate when the action was filed. The trial took place in October 1987. The amended petition, on which the action was tried, was filed in April 1987.

Count I alleged the making of the agistment agreement, the "40 cents per pound of gain" provision, plaintiff's delivery of 3,576 head to defendant, defendant's rede-

livery of 2,927 head, and the failure of defendant to account to plaintiff for 649 head upon plaintiff's demand therefor. It also pleaded the over-payment of $14,-831.84. Count I made no mention of death loss or of any agreement concerning responsibility for death loss. Significantly paragraph 16 of Count I alleged that defendant's refusal to return the 649 head and to compensate plaintiff "for said cattle, plus gain and plus the [overpayment], constitutes a willful, wanton, malicious and wrongful act performed intentionally and without just cause or excuse by defendant and therefore [plaintiff is] entitled to punitive damages in the sum of $500,000." The prayer of Count I was for $275,000 actual damages and $500,000 punitive damages.

Although defendant's answer admitted some of the allegations of Count I, defendant denied the allegations of paragraph 16. Another allegation of the answer, pleaded in response to plaintiff's claim that defendant "failed to account" for the missing 649 head, was the following: "Defendant has heretofore advised plaintiff that 649 head of plaintiff's cattle had cecum (sic) to hemophlous (sic) and 'red nose' and thereby died."

On the morning of the trial plaintiff dismissed his "claim for punitive damages." Prior to the impanelment of the jury the defendant requested leave to amend his answer by interlineation to state, in response to Count I, "the cattle died through no negligence on the part of defendant." The court denied that request.

In his opening statement, plaintiff's counsel told the jury that defendant had stated to plaintiff, with respect to the 649 missing head, "they all died." Defendant, called as a witness by the plaintiff, testified to having an "extraordinary death loss" with respect to plaintiff's cattle. He said that hundreds of plaintiff's cattle died from red nose and "the bad cold winter." Defendant testified that the "normal death rate" for pasturing cattle such as plaintiff's was "6 to 10 percent."

Plaintiff, on direct examination by his counsel, testified that defendant agreed to bear the death loss and that defendant told the plaintiff that 649 head had died.

Billy Jackson, an employee of defendant who was called as a witness for plaintiff, testified that he did not know how many of plaintiff's cattle died, that "we had a lot of sickness and red nose," that on one day "we hauled off five or six carcasses," that at least one carcass a day was hauled away, that the veterinarian had been out there to treat the sick cattle, and that "we tried to doctor them ourselves and gave them shots and medicine."

On cross-examination of the defendant during the presentation of defendant's evidence, plaintiff's counsel elicited testimony that defendant "knew we had a bad death loss," that the cattle Dr. Keeney looked at were plaintiff's cattle, that there was no sickness in other cattle which were kept by defendant in a separate field and which were "raised" rather than brought in from a sales auction.

Defendant offered testimony of Dr. Keeney, a veterinarian, that he saw and treated sick cattle on defendant's farm and charged $4,000 for doing so. Mark Edwards, a defense witness who worked for a slaughterhouse, testified that he picked up at least 500 carcasses from defendant and that 100 carcasses were not good enough to haul away. Defendant testified that the carcasses picked up by Edwards were plaintiff's cattle.

At the close of all the evidence, on the motion of plaintiff, the trial court told the jury that "the court has ruled, as a matter of law, that defendant is liable to [plaintiff] for [the 649 missing head], and so that issue will not be submitted to you.... [Defendant] is liable to [plaintiff] for the cattle. The amount, if any, that you find he is liable is up to you. The court is making no ruling with respect to the damages."

Although the court gave standard general instructions, the only written instruction given with respect to Count I was Instruction 7, which reads: "Upon [plaintiff's] claim for damages concerning the 649 head of cattle you must award plaintiff such sum as you believe is the balance due

[plaintiff] under the contract for failure to redeliver the 649 head of cattle."

The parties, by their respective pleadings, agree that defendant "takes and feeds other persons' cattle for a certain price and is an agister." In the absence of a specific agreement otherwise, *Cummings v. Mastin,* 43 Mo.App. 558, 560 (1891), an agister is not an insurer of the animals in his possession, *McCarthy v. Wolfe,* 40 Mo. 520, 522 (1867); *Winston v. Taylor,* 28 Mo. 82, 85 (1859); *Rey v. Toney,* 24 Mo. 600, 601 (1857); *Casey v. Donovan,* 65 Mo.App. 521, 527 (1896), 3A C.J.S. Animals § 49, p. 519, and his duty with respect to them is to exercise ordinary care. *McCarthy v. Wolfe,* supra; *Winston v. Taylor,* supra; *Rey v. Toney,* supra; *Casey v. Donovan,* supra. See 94 A.L.R.2d 319 (Agister's liability for injury, weight loss, or death of pastured animals).

■ In an action by the bailor against the bailee for non-return of the bailed animals, if the petition alleges negligence on the part of the bailee, the bailor has the burden to prove such negligence. *McCarthy v. Wolfe,* supra; *Crawford v. Cashman & Son,* 82 Mo.App. 554, 558 (1899); *Casey v. Donovan,* supra. It has been said that there is no absolute rule with respect to the burden of proof, *Winston v. Taylor,* supra, and if the petition of the plaintiff-bailor alleges merely that the bailee refused to comply with the bailor's demand for the return of the animals, the bailee's failure to account for the loss "in any manner" raises the presumption that the loss was due to the bailee's negligence. *Casey v. Donovan,* supra, at 527. See 23 A.L.R. 276 (Presumption and burden of proof in agistment cases).

In *Cummings v. Mastin,* supra, at 560 the court said:

"The proper mode of procedure under a petition only alleging demand and refusal is to make proof thereof. Defendant will then show the loss of the property, as his excuse for nondelivery. It will then devolve upon plaintiff to show that such loss occurred through his negligence. *Winston v. Taylor,* 28 Mo. 82; *Goodfellow v. Meegan,* 32 Mo. 280."

In *Vaughn v. Jackson,* 216 S.W. 331 (Mo.App.1919), plaintiff-bailor brought an action against the bailee of a heifer. The petition pleaded the bailment, the payment by the plaintiff of the bailee's compensation, and the failure of the bailee to return the animal on demand. Reinstating the verdict and judgment for the bailee which the trial court had improperly set aside, the court of appeals said, at 332:

"The duty the defendant owed plaintiff was that of an agister or bailee for hire. The cause of action is founded on the negligence of the bailee. While the burden of proof is upon plaintiff to show such negligence, and that burden never shifts, plaintiff sustained the burden upon him by merely pleading and proving the fact of bailment, and the failure or refusal of defendant to return the property on proper and timely demand. The burden of bringing forward evidence, but not the burden of proof, then shifted to the defendant, to excuse his failure to return the property by showing that the loss was due to a cause consistent with the exercise of reasonable care on his part. (Citing authorities.)"

The court also said, at 332:

"[P]laintiff made out a prima facie case by showing a delivery of his heifer and the failure of defendant to return it on demand. Defendant then introduced evidence tending to show that it was not his fault that the heifer escaped, but that the heifer was stolen from his pasture. If defendant's evidence disproving negligence on his part and the proof of negligence arising in favor of plaintiff on his showing were equally balanced, then the verdict must have been for the defendant, as it was not the duty of the defendant to show by the preponderance of the evidence that he was not negligent. On the other hand, it was the duty of plaintiff to show by the preponderance of the evidence that the defendant was negligent."

Although none of the foregoing cases has been expressly overruled, at least in non-animal bailments it is now held that, under certain conditions of the pleadings,

the bailee has the burden of proof on the issue of his exercise of due care with respect to the bailed article.

In an action by the bailor against the bailee, based on the latter's failure to return the bailed article, the bailor may proceed on alternate theories of general negligence of the bailee, specific negligence of the bailee, or breach of the bailment contract by the bailee. *C.V. Sohn, Inc. v. J.W. Milligan, Inc.*, 741 S.W.2d 60, 63[3] (Mo.App.1987); *Royster v. Pittman*, 691 S.W.2d 305, 307[2] (Mo.App.1985); *Ryan v. Park–Rite Corp.*, 573 S.W.2d 450, 452[3] (Mo.App.1978); *Broadview Leasing Co. v. Cape Central Airways, Inc.*, 539 S.W.2d 553, 560 (Mo.App.1976). The duty of the bailee is to exercise ordinary care with respect to the bailed article, *State Farm Fire & Cas. Co. v. Emde*, 706 S.W.2d 543, 547 (Mo.App.1986); *Ryan v. Park–Rite Corp.*, supra; *Nuell v. Forty–North Corporation*, 358 S.W.2d 70, 75[5] (Mo.App. 1962), and, in the absence of a specific agreement otherwise, the bailee is not an insurer. *Broadview Leasing Co. v. Cape Central Airways, Inc.*, supra, at 564[11]. Usually the issue of the bailee's exercise of due care is one of fact rather than law. *Broadview Leasing Co. v. Cape Central Airways, Inc.*, supra, at 564[13].

"Where general negligence is relied upon, the burden of going forward with the evidence is on the bailee, but the burden of proof remains on the bailor." *Broadview Leasing Co. v. Cape Central Airways, Inc.*, supra, at 560. It seems obvious that if the bailor pleads specific negligence, he assumes the burden of proving that allegation.

Where the bailor does not plead general or specific negligence on the part of the bailee but pleads breach of the bailment contract by the bailee in failing to return the bailed article in an undamaged condition, the burden of proof is on the bailee "to excuse or explain his failure to return the property." *Church v. Richfer Corp.*, 618 S.W.2d 29, 30[1] (Mo. banc 1981); *Nuell v. Forty–North Corporation*, supra, at 76[6]. In *Broadview Leasing Co. v. Cape Central Airways, Inc.*, supra, at

561, the court said that where the bailor pleads breach of the bailment contract, "the burden of proof lies with the bailee to *plead* and prove due care on its part." (Emphasis added.) "A bailee is also free to show that his non-delivery was due to the destruction, loss, etc. of the goods from a cause for which he is not liable." *Church v. Richfer Corp.*, supra, at 31.

From the foregoing authorities it may be concluded that if plaintiff had pleaded general or specific negligence on the part of the defendant with respect to the loss of the 649 head, plaintiff had the burden to prove such negligence and defendant's evidence tending to show that the cattle died for causes other than defendant's lack of due care would have been admissible under a mere general denial in the answer.

Plaintiff, in his brief as respondent, argues that the petition was based on the theory of defendant's breach of the bailment contract, that the answer did not affirmatively plead due care on the part of the bailee, and that defendant's request to amend so as to plead due care was untimely and properly denied.

The flaw in plaintiff's position is that he fails to consider the fact that paragraph 16 of the petition pleaded willful, wanton, malicious, and wrongful misconduct on the part of the defendant and that allegation was not abandoned by plaintiff until the morning of the trial. Defendant's answer denied the allegations of paragraph 16, and the answer elsewhere had pleaded that the cattle died by reason of disease. Since evidence of defendant's due care would have been admissible in response to a charge of general or specific negligence, a fortiori, such evidence would have been admissible in defense of paragraph 16. When paragraph 16 was deleted the trial court should have granted defendant leave to amend its answer to plead due care. Defendant's request was timely because it was made within minutes after plaintiff abandoned paragraph 16. Plaintiff is in no position to claim surprise because, months before trial, plaintiff knew that defendant

claimed that the 649 head of cattle had died.

Because defendant sought to amend his answer more than 20 days after it was served, it was necessary that he obtain leave of court or the written consent of the plaintiff to do so, Rule 55.33(a) V.A.M.R. That rule contains this mandate: "[L]eave will be freely given when justice so requires." Under the circumstances here, justice did so require and the trial court abused its discretion in not granting defendant leave to amend its answer.

It is also true that the trial court improperly directed a verdict in plaintiff's favor on Count I with respect to the issue of liability. Although the trial court had denied defendant leave to amend its answer, some evidence was introduced, much of it by the plaintiff, showing that many of the missing 649 head had died, that defendant and his employees had treated those cattle for disease, and that defendant had expended $4,000 in veterinary fees for that purpose. To say the least, the record makes it clear that there was an issue of fact with regard to whether defendant exercised due care with respect to the missing animals or whether their nondelivery to plaintiff was attributable to defendant's negligence or possibly willful misconduct.

"It is seldom, if ever, that a court should direct a verdict for a plaintiff where the case depends upon oral evidence and plaintiff has the burden of proof [on at least some issues]." *Dunn v. General Motors Corporation*, 466 S.W.2d 700, 706[5] (Mo. 1971). As defendant's brief points out, one issue of fact for jury determination was whether defendant orally agreed to assume responsibility for any death loss as part of the bailment contract. There was a conflict in evidence on that issue. The principal issue was whether the 649 head, or at least some of them, died from causes unrelated to defendant's manner of care. It is clear that there was evidence available which would have required submission of that issue to the jury.

The validity of Points I and II require reversal and remand with respect to Count I.

Defendant's third point asserts that Instruction 11, the measure of damages instruction on Count III which was given at the request of plaintiff, was erroneous. Plaintiff agrees that Instruction 11 was erroneous but claims that the error was not prejudicial. Count III was based on a bailment of 18 bulls and both sides treat that bailment as separate from the one involved in Count I. No precedential purpose would be served in discussing Count III. Defendant makes no claim that the verdict thereon was excessive. It is unnecessary to rule on the correctness of Instruction 11 and this court does not do so. Examination of the entire record shows that the error, if any, in giving Instruction 11 was not prejudicial.

That portion of the judgment pertaining to Count I of the petition and awarding plaintiffs Charles Thummel and Federal Deposit Insurance Corporation $190,700 damages thereon is hereby reversed and the cause is remanded for further proceedings consistent with this opinion; that portion of the judgment awarding said plaintiffs the sum of $6,600 on Count III of the petition is affirmed. It is so ordered.

MAUS and PREWITT, JJ., concur.