**John TEMPLE, Plaintiff–Appellant,**

v.

**McCAUGHEN & BURR, INC., Defendant–Respondent.**

No. 60481.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 8, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 26, 1992.

Canice Timothy Rice, Jr., St. Louis, for plaintiff-appellant.

Stanley E. Goldstein, Clayton, for defendant-respondent.

STEPHAN, Judge.

John Temple sued: (1) McCaughen & Burr, Inc. ("the Dealer"); (2) Sessions Hootsell Enterprises, Inc. ("Enterprises"); and (3) Sessions Hootsell and Linda Hootsell, as the statutory trustees of Enterprises, seeking damages and other relief for the loss of an oil painting. The trial court: (1) dismissed some of the counts; (2) entered a default judgment on other counts; and (3) found in favor of the Dealer and against Temple on the remaining counts, as discussed, in detail, below. Temple appeals from the dismissal of one of the counts. We affirm in part, reverse in part and remand.

In 1974, Temple purchased a 101 year-old painting, entitled: "Near Yazoo Pass, Mississippi" ("the Painting") by Joseph R. Meeker. In September 1982, Temple spoke with Bud Blagbrough ("Blagbrough"), then manager of the Dealer, regarding the sale of the Painting. Blagbrough suggested that the Dealer could sell the Painting for approximately $10,000. Therefore, on October 11, 1982, Temple and the Dealer entered into a 90 day consignment agreement whereby the Dealer would attempt to sell the Painting, and, if the Dealer was successful, the Dealer would pay Temple $10,000.

Either at this time, or shortly thereafter, Blagbrough suggested to Temple that the Dealer send the Painting to the Mississippi Museum of Art ("the Museum") for an exhibition and sale. Temple agreed. The Painting later appeared on display at the Museum, with a list price of $15,000. No one purchased the Painting. After the consignment period expired, Temple agreed to let the Dealer keep the Painting, since the Dealer was continuing to try to sell it.

On May 19, 1983, after the close of the exhibition, the Museum delivered the Painting to Sessions Hootsell since he "was the [Museum's] contact for the loan." Sometime near the end of 1985, Temple asked the Dealer to return the Painting. On March 13, 1986, Blagbrough told Temple that the Dealer had lost possession of the Painting and that it was hanging at Vanderbilt University. On August 11, 1986, Temple made a written demand for the return of the Painting or for payment. The Dealer has neither returned the Painting nor paid Temple for it.

On April 12, 1989, Temple filed suit against the Dealer, Enterprises, Sessions Hootsell and Linda Hootsell. On September 22, 1989, Temple filed an eight count amended petition. In Counts I through IV, Temple sought recovery against the Dealer. Temple entitled these Counts as follows: Count I—"Bailment"; Count II—"Action for Imposition of a Resulting Trust Arising from Fraud"; Count III—"Fraud"; and Count IV—"Negligence". In Counts V and VI, Temple sought recovery against Enterprises. Temple entitled these Counts as follows: Count V—"Conversion"; and Count VI—"Fraud". Finally, in Counts VII and VIII, Temple sought recovery against Sessions Hootsell and Linda Hootsell. Temple entitled these Counts as follows: Count VII—"Conversion"; and Count VIII—"Fraud".

Neither Enterprises nor the Hootsells appeared at trial. Relying apparently on Temple's failure to obtain service upon Enterprises and the Hootsells, the trial court orally dismissed Counts V Through

VIII, without prejudice. The case, thereafter, proceeded to trial against the Dealer. At the close of Temple's evidence, the Dealer made a motion for a directed verdict or a motion to dismiss the four remaining counts.[1] The trial court orally dismissed Counts I and IV. The Dealer then presented evidence on Counts II and III. At the close of all evidence, the trial court ruled in favor of the Dealer on Counts II and III. The court then reconsidered its dismissal of Count IV, ruling in favor of the Dealer on that Count, as well. The court also reconsidered its dismissal of Counts V and VI. The court held that Enterprises had been properly served and joined, but failed to appear in court. The court, therefore, entered a default judgment in favor of Temple and against Enterprises in the amount of $15,000, together with pre-judgment interest, for a total judgment of $29,736.40, together with costs. The court reaffirmed its dismissal of Count I. Temple appeals solely from the dismissal of this Count, contending that he made a submissible case of: (1) breach of the bailment contract; (2) general negligence; (3) conversion; and (4) breach of the agency contract.

Temple's Count I reads as follows:

### Bailment

Comes now [Temple], and for Count I of his cause of action against [the Dealer], states as follows:

1. [Temple] is a resident of the County of St. Louis, State of Missouri.

2. [The Dealer] is a corporation organized and existing under the laws of the State of Missouri with its principal place of business in the County of St. Louis, Missouri.

3. On October 11, 1982, [Temple] was and is the owner of a certain framed oil painting named "Near Yazoo Pass Mississippi" by the artist J.R. Meeker ("the Painting") which he consigned to [the Dealer] for sale.

4. By mutual agreement between [Temple] and [the Dealer], [Temple] left the Painting with the defendant for consignment sale according to the Sales Agreement, attached hereto, marked "Plaintiff's Exhibit 1" and incorporated herein by reference.

5. [The Dealer] received the Painting and agreed to preserve the Painting for [Temple] and either to return the Painting on January 9, 1983, or to pay to [Temple] the sum of Ten Thousand Dollars ($10,000.00).

6. After January 9, 1983, [Temple] and [the Dealer] orally extended such consignment agreement for a period until [Temple] demanded return of the Painting or until [the Dealer] paid [Temple] for the Painting as stated in the Sales Agreement.

7. [Temple] demanded return of the Painting or payment of $10,000.00 on August 11, 1986, but [the Dealer] has failed and refused to return the Painting to [Temple] or to pay [Temple] the sale price of $10,000.00, all to [Temple's] damage in the sum of Ten Thousand Dollars ($10,000.00).

WHEREFORE, [Temple] prays for judgment against [the Dealer] on Count I in an amount as is fair and reasonable, for interest from August 11, 1986 together with his costs herein expended.

In court-tried cases, a motion to dismiss filed at the close of a plaintiff's case is treated as a submission on the merits, requiring the court to determine credibility of the witnesses and to weigh the evidence. *The Pasta House Company v. Williams*, 833 S.W.2d 460, 461 (Mo.App. E.D.1992). Accordingly, we view the evidence in the light most favorable to the judgment. *Id.* at 461. We will sustain the trial court's judgment unless it is not supported by substantial evidence, it is against

---

1. Both parties, as well as the trial court, variously refer to the motion as a motion to dismiss and as a motion for a directed verdict. In a court-tried case, this motion is properly filed under Rule 67.02 and designated a motion to dismiss. In a jury-tried case, such a motion would be filed under Rule 72.01 and would be called a motion for a directed verdict. *Stivers Lincoln–Mercury v. Abbott*, 796 S.W.2d 923, 925, n. 1 (Mo.App.1990). The particular name given to this motion does not affect our review of this case.

the weight of the evidence, or it erroneously declares or applies the law. *Id.*

At the outset, we note that the character of a cause of action must be determined from the factual allegations of the pleading, without regard to the caption or name assigned by the pleader. *Jenish v. Weaver*, 676 S.W.2d 526, 527 (Mo.App. 1984). The facts set forth in the petition and the relief sought determine the plaintiff's theory, rather than the form of the petition. *Scantlin v. City of Pevely*, 741 S.W.2d 48, 50 (Mo.App.1987). A poor choice of words will not defeat a cause of action. *Id.*

Temple's first theory of recovery is breach of the bailment contract. The term "bailment" in its ordinary legal sense signifies a contract resulting from the delivery of a thing by the bailor to the bailee on condition that it be restored to the bailor in accordance with his directions as soon as the purpose for which it was bailed is satisfied. *W. Cty. Internal Med. v. Domian Stan. Service*, 725 S.W.2d 116, 118 (Mo. App.1987). Where the bailor pleads and presents evidence of breach of the bailment contract by the bailee failing to return the article in an undamaged condition, the burden of proof is on the bailee to plead and prove due care on its part; "to excuse or explain his failure to return the property." *Thummel v. Krewson*, 764 S.W.2d 700, 705 (Mo.App.1989).

Here, Temple pled and presented evidence that there was a specific kind of bailment contract, a consignment agreement, which resulted from Temple, the bailor, delivering the Painting to the Dealer, the bailee, on the condition that the Dealer attempt to sell the Painting for Temple, and that, depending on whether or not it sold, that the Dealer would either return it to Temple or pay Temple $10,000 for it. Temple also pled that the Dealer failed and refused to do the same. Since the burden of proof then lay with the Dealer to plead and prove due care on its part; to excuse or explain its failure to return the Painting, the trial court erred in dismissing Temple's bailment claim at the close of Temple's case.

Temple's second theory of recovery is general negligence. When a bailor pursues an action against a bailee based on the latter's failure to return the bailed article, the bailor may proceed on this theory. *Thummel v. Krewson*, 764 S.W.2d at 705. The duty of the bailee is to exercise ordinary care with respect to the bailed article. *Id.* Usually, the issue of the bailee's exercise of due care is one of fact rather than of law. *Id.* Where general negligence is the theory relied upon, the burden of going forward with the evidence is on the bailee, while the burden of proof remains with the bailor. *Id.*

Here, Temple's Count I and the supporting evidence set forth sufficient facts to infer that the Dealer was negligent in refusing to either return the Painting to Temple or to pay Temple $10,000 for it. Since the trial court dismissed Count I before the Dealer offered evidence to defeat the inference of negligence, as was the Dealer's burden, the trial court erred. *See Smith v. Morgan Drive Away, Inc.*, 613 S.W.2d 469 (Mo.App.1981).

Temple's third theory of recovery is conversion. Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's right. *W. Cty. Internal Med. v. Domian Stan. Service*, 725 S.W.2d at 118. Proof of conversion can be shown either by: (1) a tortious taking; (2) any use or appropriation to the use of the person in possession, indicating a claim of right in possession, indicating a claim of right in opposition to the rights of the owner; or (3) a refusal to give up possession to the owner on demand. *Id.*

Here, Temple pled that the Dealer refused, upon demand, to either return the Painting to Temple or to pay him for the Painting. These facts sufficiently state a cause of action for conversion. The trial court, therefore, erred in dismissing Count I at the close of Temple's case.

Finally, Temple's fourth theory of recovery is breach of the contract of agency. Specifically, in Temple's appellate brief

he argues that: (1) while the Dealer requested and obtained Temple's permission to send the Painting to the Museum for exhibition and possible sale, the Dealer never disclosed that it would engage Hootsell to accomplish the transfer; (2) Temple had no reason nor did he ever agree to entrust his valuable property to Hootsell; (3) if Hootsell lost or stole that Painting, the Dealer is responsible, because an agent is liable for the sub-agent's default just as if it were his own; (4) in a case where a sub-agent's employee stole the principal's money, the court ruled that the agent's exercise of ordinary care in selecting the sub-agent did not relieve it from liability under its contract; and (5) therefore, the Dealer is liable regardless of whether Hootsell or the Dealer lost or absconded with the Painting. These arguments do not appear in Count I. Count I fails to disclose any agency relationship between the Dealer and Hootsell, let alone that there was a breach of the agency contract. The trial court, therefore, did not err in failing to consider this theory of recovery.

For the reasons stated above, we affirm in part, reverse in part, and remand this case to the trial court for further proceedings consistent with this opinion. Specifically, the trial court should: (1) consider Count I, entitled "Bailment", as sounding claims for breach of the bailment contract, general negligence, and conversion; and (2) rule accordingly. In light of this disposition, we deny the Dealer's motion for damages for filing a frivolous appeal.

PUDLOWSKI, P.J., and CRIST, J., concur.