918 F.Supp. 297 (1996)
INSTITUTE OF LONDON UNDERWRITERS, Plaintiff,
v.
EAGLE BOATS, LTD. and William Seebold, Defendants.
No. 4:92CV2236SNL.
United States District Court, E.D. Missouri, Eastern Division.
March 12, 1996.
Joel K. Goldstein, Douglas E. Gossow, St. Louis, MO, for plaintiff.
Michael J. McAvoy, Partner, McAvoy, Bahn & Tolin, Fenton, MO, for defendants.

*298 MEMORANDUM OPINION

LIMBAUGH, District Judge.
Plaintiff, as subrogee, brought this action alleging that defendant Seebold negligently failed to return to plaintiff's insured a 1991 Seebold Eagle 265 Limited Edition motorboat and a 1990 Buccaneer Deluxe Tri-Axle trailer (hereinafter referred to jointly as the "boat/trailer") which been loaned to defendant for a magazine photo-layout shoot. Count I of plaintiff's complaint was lodged against the corporate defendant Eagle Boats, Ltd; Count II of the complaint was lodged against defendant Seebold. On November 18, 1993 this Court certified and entered a judgment of default against defendant Eagle Boats, Ltd. The case proceeded to trial against the remaining defendant Seebold. The entire case was tried before the Court sitting without a jury on March 10, 1995. Before testimony began, plaintiff moved to bar the expert testimony of two deposition witnesses of the defendant: Paul A. Hopkins and Michael D. Atkinson. This oral motion was taken with the case. The plaintiff's motion to bar the expert testimony of deposition witnesses Hopkins and Atkinson is hereby denied and all other objections to exhibits that were taken with the case are now overruled, and all exhibits offered into evidence at trial are received into evidence. This Court, having now considered the pleadings, the testimony of defendant Seebold, the depositions testimony, the documents in evidence and the stipulation of uncontested facts filed by the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure.

FINDINGS OF FACT
Plaintiff is a group of foreign underwriters. At the time of the events which led to this lawsuit, plaintiff had issued an insurance policy to Hoppies Village Marina, effective from July 1, 1990 through July 1, 1991, which provided coverage for damage to or loss of vessels which Hoppies owned, including the subject boat/trailer. Defendant Seebold, during the relevant time-period, was the president of Eagle Boats, Ltd.[1] Eagle Boats, Ltd. was in the business of manufacturing recreational motorboats, including the subject motorboat. The company employed about 35 people and Seebold and his wife were the sole corporate officers and shareholders.
Sometime prior to April 11, 1991, Seebold was approached by a boating magazine, Trailer Boats, about doing a feature on a motorboat manufactured by Eagle Boats, Ltd. The magazine feature would include a written article and photographs of the boat on Grand Lake, near Ketchum, Oklahoma. Seebold expressed interest in the idea to the magazine's representative.
At the time of the magazine's request to write a feature article about one of Eagle Boat's motorboats, a motorboat owned by Hoppies Village Marina ("Hoppies") was at Eagle Boat's facility in Fenton, Missouri undergoing minor paint repairs. The motorboat was a 1991 Seebold Eagle 265 Limited Edition; a 26 foot, 4000 to 4500 pounds, 600 horsepower supercharged motorboat capable of attaining a speed of 80 mph. It was considered by those in the boating industry to be the "cadillac" of motorboats in its class.
Shortly after receiving the magazine's request, Seebold called Hoppies and spoke with Paul Hopkins, the owner of Hoppies, and Michael Atkinson, the sales manager at Hoppies about using the 1991 Seebold Eagle 265 Limited Edition motorboat for the magazine article. The magazine article would include information not only about the boat, but also about Eagle Boats, Ltd. and Hoppies Village Marina. Hopkins agreed to the use of his boat for the article. The arrangement was for defendant Seebold to transport the boat to Ketchum, then return it to Hoppies' custody.
After finishing the touch-up work on the motorboat, defendant proceeded to transport the boat to Ketchum, Oklahoma. The boat was loaded onto a custom built trailer also owned by Hoppies. The trailer, a 1990 Buccaneer Deluxe Tri-Axle trailer, had six tires and a triple axle. The trailer did not have a locking device on it; i.e., a device capable of *299 locking the trailer to the truck. The trailer was then hooked up to an Eagle Boats, Ltd. truck.
On April 10, 1991 Seebold, along with a friend Ronnie Stevens, left St. Louis with the boat for Ketchum, Oklahoma. Seebold drove straight through to an area just outside Ketchum and stopped at the Grand Lodge Inn. He arrived at about 9:00 to 9:30 p.m. The demonstration for the magazine was scheduled at 6:00 a.m. the next day.
Seebold parked the truck, boat and trailer on the motel parking lot, parallel to a fence at the end of the lot, facing away from the highway. There was one dusk to dawn light shining in front of the motel. The boat was parked across the lot from this light. There were other boats parked on the lot at this time. Of all the boats parked on the lot, the subject boat was closest to the road. Of all the boats parked on the lot, the subject boat was the most expensive boat on the lot. The parking lot was small and narrow making it very difficult for the boat and trailer to be turned around. Behind the motel were storage units.
Seebold locked his truck, checked in, and then went to a next door restaurant for dinner. He left the restaurant at approximately 11:00 p.m. and retired to his room for the night. At approximately 4:30 to 5:00 a.m. he was awaken with the news that the boat and trailer were missing.[2]
At the time of the theft, the motorboat and trailer had a combined fair market value of not less than $60,343.25. Plaintiff became obligated to pay, and did pay, Hoppies' insurance claim of $59,343.25 for the theft of the boat and trailer. Plaintiff has incurred expenses of approximately $1388.83 in attempting to determine the cause of the loss of the boat/trailer and in attempting to recover them.[3]
By virtue of having paid Hoppies for the loss of the boat/trailer pursuant to its insurance policy, plaintiff has become subrogated to Hoppies with respect to whatever rights it may have to recover from third parties for the loss of the boat/trailer.
On November 9, 1992 plaintiff brought this cause of action under a bailment theory, alleging Seebold's negligent failure to return the boat/trailer. Seebold counters that he exercised the requisite ordinary care while the boat/trailer was in his custody and is not liable for its disappearance.

CONCLUSIONS OF LAW
Plaintiff contends that the boat/trailer was in Seebold's custody pursuant to a bailment relationship and that defendant failed to use reasonable care to prevent the theft of the motorboat and trailer.[4] Seebold contends that his care of the boat, i.e., not taking any particular precautions or using any type of locking device, was customary in the industry and demonstrates that he did not fail to use due care while the boat was in his custody.
There is no dispute by the parties that Hoppies and defendant Seebold entered into a bailment relationship. In an action by a bailor against the bailee for failure to return the bailed property, the bailor may proceed on alternate theories of general negligence of the bailee, specific negligence of the bailee, or breach of the bailment contract. Thummel v. Krewson, 764 S.W.2d 700, 705 (Mo.App.1989); Broadview Leasing Co. v. Cape Central Airways, Inc., 539 S.W.2d 553, *300 560 (Mo.App.1976). The duty of the bailee is to exercise ordinary care in the handling and safekeeping of the bailed property. Temple v. McCaughen & Burr Inc., 839 S.W.2d 322, 326 (Mo.App.1992); Thummel, at 705; Kinder v. Fantasy Coachworks, Ltd., 762 S.W.2d 533, 534 (Mo.App.1988); Centennial Ins. Co. v. International Motor Car, 581 S.W.2d 883, 885 (Mo.App.1979); Toston v. McCracken, 555 S.W.2d 48, 51 (Mo.App.1977). This includes using ordinary care to prevent theft of the bailed property. Kinder v. Fantasy Coachworks, at 534; see also, Robertson v. Clark Bros. Builders, 786 S.W.2d 602, 603-04 (Mo.App.1990); Nuell v. Forty-North Corp., 358 S.W.2d 70, 75 (Mo.App.1962). In a bailment for the mutual benefit of the bailor and bailee, the bailee is not an insurer, and his/ her standard of care with respect to the bailed property remains the exercise of ordinary care. Robertson, at 603; Centennial, at 885; Toston, at 51; Nuell, at 75. The issue of the bailee's exercise of due care is one of fact, not law. Temple, at 326; Thummel, at 705; Toston, at 51; Broadview Leasing, supra.
Where the bailor asserts a theory of liability under general negligence, the burden of going forward with the evidence is on the bailee, while the burden of proof remains with the bailor. Temple, at 326; Thummel, at 705; Kinder, at 534; Centennial, at 885; Broadview Leasing, at 560. This "burden-shifting" is best described by the Broadview Leasing Court as follows:
"It is clear in this state that by alleging general negligence on the part of the bailee, the bailor, upon proof of loss, raises an inference of negligence under the res ipsa loquitur doctrine and thus shifts the burden of going forward with the evidence to the bailee, but the burden of proof rests with the bailor. Under this theory, the bailor makes a prima facie case shifting to the bailee the burden of going forward with the evidence to rebut the inference of negligence."
Broadview Leasing, at 560 (footnotes omitted); see also, Kinder, at 534; Centennial, at 885.
There is no dispute that the boat and trailer are gone; their whereabouts unknown. Plaintiff contends that Seebold was negligent in his care of the boat/trailer because he failed to take any precautions to prevent a theft, including but not limited to locking devices or a simple lock and chain; parking the boat/trailer somewhere less accessible on the parking lot; or hiring someone to watch the boat/trailer.
Seebold offered evidence that his failure to use any locking device was not uncommon in the industry. He testified that he did not use locking devices on boats stored at his facility, except to chain them together and lock the chain. He offered the deposition testimony of Hopkins and Atkinson that it is not customary to use a locking device.
Evidence of customs and usage are generally admissible to show what others engaged in a particular business do in comparison to the conduct of the defendant alleged to have acted in a negligent manner. Robertson v. Clark Bros. Builders, at 604; Broadview Leasing, at 562. However, such evidence does not set the legal standard of care. Robertson, at 604; Broadview Leasing, at 562. It is no different from any other evidence to be considered in adjudicating the defendant's negligence. In fact, even if such evidence is unchallenged, a court may disregard it and rule against the defendant. See, Robertson, at 604; Broadview Leasing, at 563-64. The Court in Broadview Leasing noted that Justice Holmes distinctly set forth this principle when he stated:
"What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."
Broadview Leasing, at 563 quoting Texas & P.R. Co. v. Behymer, 189 U.S. 468, 470-71, 23 S.Ct. 622, 623, 47 L.Ed. 905 (1903).
Defendant Seebold testified that the only "precaution" he took was to park the boat/trailer so that it would be inaccessible and difficult to remove. However, the parking spot he chose was the closest parking space to the roadway. He admitted that he could have put a chain around the boat and trailer and lock it to the truck (which was itself locked), but that he did not have one *301 with him. He further testified that although it might be difficult to put a locking device on the Buccaneer trailer, several types of locking devices, including a lock and chain, are available. He testified that he did not hire anyone to guard the boat overnight. Finally, he testified that although he was aware of the storage units behind the motel (he observed them upon arriving at the motel), he assumed that they were private storage units and did not inquire as to possibility of renting one overnight.
Other than defendant's belief that the boat/trailer was parked in an inaccessible parking spot, defendant took no affirmative steps to insure the safety of the boat/trailer. It took a person or persons unknown less than five (5) hours to steal the boat/trailer. The Court, after reviewing all of the evidence before it, believes that the ease in which the boat/trailer was stolen was due largely to the defendant's failure to take appropriate measures, such as a locking device or overnight supervision of the boat/trailer, to deter the theft. Although the defendant as the bailee is not an insurer of the bailed property, and the Court fully appreciates the fact that the theft might have occurred despite precautions being taken, defendant still exercised a lack of ordinary care by parking the boat/trailer close to the roadway, leaving it unattended, and with no locking device whatsoever to deter a potential thief. Seebold has failed to demonstrate that he exercised due care in the safekeeping of the boat/trailer while it was in his custody. The Court finds that defendant Seebold, as the bailee of the subject boat/trailer, was negligent in his handling and safekeeping of the bailed property.
For the foregoing reasons, the Court enters judgment for the plaintiff and against defendant Seebold on the merits of Count II of the plaintiff's complaint.
NOTES
[1] Eagle Boats, Ltd. was a Missouri corporation which was voluntarily dissolved in July 1993.
[2] The exact circumstances surrounding the disappearance of the boat and trailer have yet to be determined. However, there appears to be no dispute, and the Court concurs, that the boat and trailer were stolen by a person or persons unknown.
[3] Evidently, sometime later, a part of the boat's drive train known as the "lower unit" was recovered.
[4] Defendant Seebold vaguely advances the notion that he was acting only as an agent for Eagle Boats, Ltd. and thus, cannot be held individually liable for his own negligence. He cites no case-law for this proposition. The undisputed evidence is that Seebold personally communicated with the magazine about the article, personally communicated the magazine article idea to Paul Hopkins, personally arranged for the transportation of the motorboat, personally drove the motorboat to Ketchum, Oklahoma, and personally parked the boat/trailer on the lot. Since he and his wife were the only corporate officers and shareholders for Eagle Boats, Ltd., and he was directly involved in every event leading up to the theft of the boat, the Court finds his argument to be meritless.