David A. STONE and Barry Stone, d/b/a The Joda Partnership, Plaintiff/Appellant.

v.

CROWN DIVERSIFIED INDUSTRIES CORP., d/b/a Million Air St. Louis, and Corporate Aircraft Management, Inc., Defendants/Respondents.

No. ED 75452.

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 2, 1999.

Rehearing Denied Jan. 26, 2000.

David A. Stone, Summers, Compton, Wells & Hamburg, P.C., Asst. Atty. Gen., St. Louis, for appellant.

Leo W. Nelson, Paul B. Lee, Holtkamp, Liese, Beckemeier & Childress, P.C., St. Louis, Thomas K. Vandiver, Kimberly Cofman, Sonnenschein, Nath & Rosenthal, St. Louis, for Crown Diversified Industries Corp., d/b/a Million Air St. Louis.

Jan E. Dodd, Sandberg, Phoenix & von Gontard, P.C., St. Louis, for Corporate Aircraft Management, Inc.

## OPINION

JAMES R. DOWD, Presiding Judge.

Plaintiffs David and Barry Stone, d/b/a The Joda Partnership (hereafter "JODA"), appeal from the judgments of the trial court granting Summary Judgment in favor of defendants Crown Diversified Industries Corp., d/b/a Million Air St. Louis (hereafter "Million Air") and Corporate Aircraft Management, Inc. (hereafter "CAMI") and denying Summary Judgment to JODA. We reverse the trial court's grant of defendants' Motion for Summary Judgment and affirm the trial court's denial of JODA's Motion for Summary Judgment.

### FACTS

JODA is a general partnership engaged in the business of aircraft financing. In the course of their business, JODA loaned $1,050,000 to a Mexican corporation known as Aerotaxis del Noreste (hereafter "Aerotaxis"). Pursuant to the loan, Aerotaxis executed a promissory note and a security agreement, whereby Aerotaxis pledged a Dassault Falcon Jet (hereafter "jet"), which Aerotaxis owned, as collateral for the loan. At the time of the loan, JODA took possession of the jet and stored it at a maintenance facility in Los Angeles. The jet was kept there so Aerotaxis couldn't take possession of the jet until the loan was repaid. In addition, as further security for the loan, Aerotaxis issued an undated Bill of Sale naming JODA as the purchaser. The undated Bill of Sale was held in escrow so that, in the event of default, JODA could easily take legal title to the jet. On January 31, 1997, JODA made an additional loan in the amount of $180,000 to Aerotaxis bringing the loan to $1,230,000.[1]

In May of 1997, JODA moved the jet to St. Louis and stored the jet in a hangar at the Spirit of St. Louis Airport. The hangar was owned by defendant Million Air, a corporation in the business of storing and maintaining aircraft. Million Air leased space in its hangar to defendant CAMI, also in the business of storing and maintaining aircraft. JODA contracted with CAMI to store the jet in their hangar space for $1,000 per month.

---

1. JODA claims further expenses, including taxes, collection costs, insurance, and maintenance brought the total loan amount to $1,931,361.14. Both defendants contest the amount of these additional expenses.

On June 19, 1997, an unidentified pilot accompanied by a Chesterfield, Missouri police officer presented himself to the service front desk at Million Air's hangar. The pilot identified the jet in question by its tail number and requested that the jet be delivered to him on the ramp in front of the hangar. He did not identify himself or indicate why he was requesting delivery of the jet, nor did the Million Air employee seek this information. The employee complied with the request solely because the pilot knew the tail number of the jet. The pilot then took the jet to Texas.

The pilot to whom the jet was given was a representative from Skytech, an aircraft repair company located in Dallas, Texas. Skytech held an unrecorded and unregistered mechanic's lien in the amount of $64,954.59 for repairs made to the jet in 1995 and 1996. Skytech repossessed the jet to obtain payment of the lien. There is no evidence JODA had actual or constructive notice of Skytech's lien.

On June 24, 1997, JODA filed suit against Skytech in the District Court of Dallas County seeking to enjoin Skytech from releasing the jet to Aerotaxis or any other third party. On June 27, 1997, JODA and Skytech reached an agreement whereby JODA paid Skytech $64,954.59 in exchange for the jet. JODA then attempted to register the jet with the FAA in JODA's name so JODA could sell the jet to satisfy Aerotaxis' debt, now in default. However, in order for JODA to register the jet with the FAA in the United States, the jet had to be deregistered in Mexico. Despite a prior agreement to deregister the jet and for reasons unclear to this court, Aerotaxis blocked JODA's efforts to deregister the jet in Mexico, thereby preventing JODA from registering the jet with the FAA. Subsequently, JODA entered into an agreement with Aerotaxis entitled Mutual Release and Settlement Agreement and Covenant Not to Sue dated September 25, 1997, pursuant to which Aerotaxis would allow the jet to be deregistered under Mexican law in exchange for JODA making payment to Aerotaxis in the sum of $175,000. Thereafter, the jet was deregistered in Mexico and reregistered in JODA's name by the United States FAA. On October 14, 1997, having registered the jet with the FAA, JODA then sold the jet to Central Business Jets for $1,750,000.

On February 25, 1998, JODA filed suit against both Million Air and CAMI asserting a bailment relationship existed between JODA and both defendants. With respect to the bailment theory, JODA alleged breach of bailment contract, specific negligence, general negligence, and conversion. Pleading in the alternative, in the event that no bailment relationship existed, JODA further asserted a count of general negligence against both defendants. JODA sought damages of $79,110.29, including the $64,954.59 JODA paid to Skytech and expenses incurred in regaining possession of the jet.

On September 11, 1998, Million Air filed its Amended Motion for Summary Judgment and CAMI joined in the Motion. On September 23, 1998, JODA filed its Motion for Summary Judgment. On November 16, 1998, the trial court granted Million Air's Motion and denied JODA's. The trial court held that Skytech's lien had priority over JODA's lien and that Skytech lawfully repossessed the jet. Therefore, because Skytech's rights to the jet were superior to those of JODA, the trial court held that JODA could not maintain an action against Million Air or CAMI under any recovery and defendants were entitled to Summary Judgment. The trial court further held JODA was not entitled to summary judgment because of the existence of material facts in dispute regarding JODA's claims. JODA filed this timely appeal seeking review of both the trial court's decisions granting Million Air's motion and denying JODA's.

### STANDARD OF REVIEW

 Our review is essentially de novo. *ITT Commercial Finance Corp. v. Mid–*

*America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo.banc 1993). The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The propriety of summary judgment is purely an issue of law. *Id.* As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Id.* When considering an appeal from summary judgment, this Court will review the record in the light most favorable to the party against whom judgment was entered. *Id.* We accord the non-movant the benefit of all reasonable inferences from the record. *Id.*

▮ Generally, an order denying a motion for summary judgment is not a final judgment and therefore is not reviewable on appeal. *Reben v. Wilson,* 861 S.W.2d 171, 175 (Mo.App. E.D.1993). In some instances, the denial of a motion for summary judgment may be reviewable on appeal where the merits of that motion are intertwined with the propriety of an appealable order granting summary judgment to another party. *Kaufman v. Bormaster,* 599 S.W.2d 35, 38 (Mo.App. E.D. 1980). In this case, JODA seeks review of the trial court's order granting summary judgment for Million Air and CAMI and the denial of JODA's Motion for Summary Judgment. We hold that the merits of both parties' motions are sufficiently intertwined to warrant our review of the denial of JODA's Motion for Summary Judgment.

### ANALYSIS

Our holding in this case essentially depends upon two issues: priority and bailments. Both defendants assert as a defense to JODA's suit that Skytech's lien had priority over JODA's. Defendants further claim that no bailment relationship existed as between them and JODA and that, regardless of the issue of priority, defendants owed no duty to JODA with respect to the storage of the jet. Therefore, in order for JODA to recover, it must establish: 1) Skytech's lien did not have priority over JODA's lien; and 2) a bailment relationship existed between JODA and defendants.

*Priority*

The trial court entered summary judgment in favor of Million Air and CAMI and denied JODA's Motion for Summary Judgment because Skytech's lien had priority over JODA's lien. JODA claims the trial court erred in two respects: 1) applying Texas law; and 2) giving Skytech's lien priority over JODA's security interest.

The issue of priority is ultimately dispositive of this case. A fundamental principle of bailment law is that "repossession of the bailed property by a lienholder then entitled to possession as against the bailor is a complete defense to the bailor's action against the bailee for failure to redeliver the chattel upon termination of the bailment." 8A Am.Jur. *Bailments* Section 148 (1997). In granting Million Air's Motion for Summary Judgment, the trial court concluded that Skytech's lien was superior to JODA's and Skytech was entitled to possession of the jet. Because Million Air and CAMI released the jet to a superior lienholder, the trial court held that JODA was barred from recovery on any theory.

If Skytech's mechanic's lien had priority over JODA's, then Skytech was within its rights to exercise self-help and peacefully repossess the jet and neither Million Air nor CAMI would be liable for releasing the jet to Skytech. If, on the other hand, Skytech's lien was not superior to that of JODA, then either Million Air, CAMI, or both, may be liable for releasing the jet to Skytech. Thus, we must examine both Skytech's and JODA's liens to determine if they were perfected and, if so, which one has priority.

*Choice of Law*

As a preliminary matter, we must determine which state's law applies. The trial court, relying on the fact that Skytech's

lien attached in Texas, applied Texas law in concluding that Skytech's lien was superior to JODA's. JODA claims that Missouri and Mexican law should apply because Aerotaxis was located in Mexico.

■ The forum state will choose the applicable substantive law according to its own conflict of law doctrines. *Harter v. Ozark–Kenworth, Inc.*, 904 S.W.2d 317, 320 (Mo.App.W.D.1995). Missouri courts apply the principles of the Restatement (Second) of Conflicts of Laws to determine which state's laws govern a choice of law question. *Alfano v. AAIM Management Ass'n*, 770 S.W.2d 743, 746 (Mo.App. E.D. 1989). Section 251 of the Restatement provides:

> Sec. 251 Validity and Effect of Security Interest in Chattel
>
> (1) The validity and effect of a security interest in chattel as between the immediate parties are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the parties, the chattel and the security interest under the principles stated in Sec. 6.
>
> (2) In the absence of an effective choice of law by the parties, greater weight will usually be given to the location of the chattel at the time that the security interest attached than to any other contact in determining the state of the applicable law.

The application of Section 251 to the case at bar is complicated by the fact that there are two liens at issue and that two of the "immediate parties," Aerotaxis and Skytech, are not parties to this lawsuit. Therefore, we must analyze each lien, Skytech's and JODA's, separately according to Section 251 in order to determine whether Missouri or Texas law applies.

■ The immediate parties to the Skytech lien are Skytech and Aerotaxis. In 1995 and 1996, Skytech performed maintenance and repairs on the jet at Skytech's place of business in Dallas, Texas. According to Section 251, we must apply the state's law which has "the most significant relationship to the parties, the chattel and the security interest." Skytech is a Texas resident, the jet was located in Texas when the work was done, and Skytech's lien attached in Texas. Thus, Texas has a significant relationship to this case. Section 251(2) mandates that, in the absence of an effective choice of law, greater weight should be given to the state in which the chattel was located at the time the security interest attached. In this case, Skytech's lien was a mechanic's lien and was nonconsensual. The record before us is devoid of a choice of law clause or, for that matter, any written agreement at all between Skytech and Aerotaxis. The mechanic's lien automatically attached at the completion of the work done by Skytech.[2] Therefore, we must give greater weight to the state in which the lien attached—Texas. Comment F of Section 251 sets forth the reasoning behind such a policy with respect to nonconsensual liens: "A person who deals with a chattel should have a definite and precise basis for determining whether he will acquire a nonconsensual lien on the chattel by reason of such dealing. Such a person would usually expect that the local law of the state where he dealt with the chattel would be applied to determine whether he had acquired a nonconsensual lien thereon." For these reasons, the trial court was correct in its determination that Texas law should be applied in determining the validity and perfection of Skytech's lien.

■ Next, we must determine which state's law applies with respect to JODA's lien. The immediate parties to JODA's

---

**2.** Attachment, the initial creation of a lien, should not be confused with the term perfection, the process whereby a creditor acquires a "secured" interest. Whether or not Sky-tech's lien was perfected and had priority at the time it retook possession of the jet is the dispositive question, discussed infra.

lien are JODA and Aerotaxis. JODA's lien arises out of loans made to Aerotaxis by JODA, for which Aerotaxis pledged the jet as collateral. JODA's security agreement with Aerotaxis contains a choice of law clause selecting Missouri's as the applicable law. A choice of law provision in a security agreement or contract is generally enforced. *In re Mastercraft Metals, Inc.*, 114 B.R. 183 (Bkrtcy.W.D.Mo.1990); *Consolidated Financial Investments, Inc. v. Manion*, 948 S.W.2d 222, 224 (Mo.App. E.D.1997); *Tri–County Retreading, Inc. v. Bandag Inc.*, 851 S.W.2d 780, 784 (Mo. App. E.D.1993). Therefore, we will employ Missouri law in determining whether JODA's lien was perfected.

*Skytech's Lien*

With the choice of law question decided, we turn to the dispositive question of priority. In order to determine which lien had priority, we must first determine whether each lien was properly perfected.

■■■ As discussed above, Skytech's lien must be evaluated according to Texas law. Section 70.301 of the Texas Property Code grants an Aircraft Repair and Maintenance Lien to persons who perform repairs and maintenance on aircraft. Section 70.301 provides in relevant part:

(a) A person who stores, repairs or performs maintenance work on an aircraft has a lien on the aircraft for:

(1) the amount due under the contract for the storage, repairs, or maintenance work; or

(2) if no amount is specified by contract, the reasonable and usual compensation for the storage, repairs, or maintenance work.

Section 70.301 creates a lien in favor of Skytech. But creation is only the first component in analyzing a lien. Next, we must determine whether Skytech perfected its lien. Under Texas law, perfection of a mechanic's lien generally requires either possession of the chattel or the filing of a security agreement. *D.B. Paul v. Nance Buick Co.*, 487 S.W.2d 426 (Tex.Civ.App. 1972) (holding "it is well established that a possessory lien is lost upon delivery of the repaired vehicle to the owner where there is no fraud involved."); *Clifton v. Jones*, 634 S.W.2d 883 (Tex.App.1982) (holding that once possession of an aircraft was delivered to the owner, a repairman had no right to repossess the plane).

It is uncontested that Skytech relinquished possession of the jet and did not file a security agreement. Thus, it would initially appear that Skytech did not perfect its lien. However, Section 70.302 of the Texas Property Code further provides that a mechanic's lienholder who has relinquished possession may, nonetheless, retake possession of the chattel as long as they do not breach the peace. Section 70.302 provides, in pertinent part, as follows:

(a) A holder of a lien under this subchapter may retain possession of the aircraft subject to the lien until the amount due is paid.

(b) Except as provided by Subsection (c), *if the holder of a lien under this subchapter relinquishes possession of the aircraft before the amount due is paid, the person may retake possession of the aircraft as provided by Section 9.503, Business & Commerce Code.*

(c) The holder of a lien under this subchapter may not retake possession of the aircraft from a bona fide purchaser for value who purchases the aircraft without knowledge of the lien before the date the lien is recorded under Section 70.303.[3] (emphasis added.)

The language of Section 70.302(b) and (c) indicates that Skytech, having given up

---

**3.** Section 9.503 of the Business and Commerce Code provides that a secured party may resort to self-help in repossessing collateral as long as it can be done without a breach of the peace.

possession of the jet, could reperfect its mechanic's lien by peaceably repossessing the jet from anyone except a bona fide purchaser who purchased the jet for value and had no notice of Skytech's lien.

Consequently, we must turn to whether JODA was a bona fide purchaser. Subsection (c) prohibits a non-possessory mechanic's lienholder to repossess the chattel from a bona fide purchaser who purchased the chattel for value and without notice of the prior lien. Initially, JODA does not seem to qualify as a "purchaser" in the traditional sense of the word. JODA did not buy the jet from Aerotaxis—it merely obtained a security interest in the jet, due to the fact that Aerotaxis pledged the jet as collateral for the loans made by JODA.[4] However, the Uniform Commercial Code, as adopted in large part by both Texas and Missouri, does not rely on the traditional meaning of purchaser. Instead, the UCC defines "purchaser" as one who takes an interest in property by ". . . sale, discount, negotiation, mortgage, pledge, lien, issue or re-issue, gift or any other voluntary transaction creating an interest in property." Texas Business Code Sections 1.201(32) and (33); Sections 400.1–201(32) and (33), RSMo 1994. In addition, Comment 7 of Section 9–103 in both the Texas and Missouri versions of the U.C.C. states: "It should be noted that a 'purchaser' includes a secured party."

■ Upon a close examination of the facts in this case, it is clear that both Aerotaxis and JODA intended that JODA enjoy the status of a bona fide purchaser. The loan by JODA was certainly a high-risk venture for JODA. The financial condition of Aerotaxis, a Mexican corporation, in combination with the high mobility of the collateral could easily, and almost did, result in a significant loss to JODA. In an attempt to safeguard against these risks, JODA took possession of the jet and also insisted that an undated aircraft Bill of Sale naming JODA as the purchaser of the jet be issued and placed in escrow, so that in case of default, JODA would receive legal title to the jet. Under these circumstances, JODA was only one step removed from qualifying as an actual purchaser of the jet. It was the parties' intent to give JODA all the rights in the jet except actual legal title. The UCC was designed to protect parties like JODA, who, while not actually buying the chattel, have an identifiable interest in the chattel. Thus, we hold that JODA was a bona fide purchaser.

■ However, under Section 70.302, it is not enough that JODA was a bona fide purchaser. JODA must also have taken the jet for value and without notice of Skytech's lien. In this case, JODA took the jet from Aerotaxis as a pledge to secure the repayment of its loans. JODA gave value, the loan proceeds which amounted to substantially all of the fair market value of the jet, to Aerotaxis in return for the jet. Further, JODA took without notice of Skytech's lien, as it was neither recorded nor did Skytech maintain possession of the jet.[5] Therefore, we hold that JODA was a bona fide purchaser who acquired the jet for value and without notice of Skytech's lien. Accordingly, Skytech had no right to repossess the jet from JODA. The trial court erred in holding that Skytech had a properly perfected lien against the jet.

4. JODA did eventually obtain title to the jet from Aerotaxis as a result of the settlement of the debt at a later date. However, this transfer of title is of no assistance in determining JODA's status when the jet was released, as the transaction took place after the jet was released to Skytech.

5. This court notes that, before entering into the security agreement with Aerotaxis, JODA claims it checked the records in Mexico for notice of prior liens on the jet. Had Skytech wished to put JODA, or others, on notice of its mechanic's lien it could have, instead of filing with the FAA, filed a statement in Mexico. Surely it is foreseeable that a prospective purchaser or creditor of a Mexican-owned jet would check the Mexican records as JODA apparently did. There is no evidence before us that Skytech made any attempt to file notice of its lien anywhere.

*JODA's Lien*

Next, we must ascertain whether JODA's lien was properly perfected. As discussed above, this court will employ Missouri law in evaluating JODA's lien. Generally, the U.C.C. does not apply to the perfection of a security interest in an aircraft, as aircraft are subject to Federal regulation by the FAA. Section 400.9–104(a), RSMo 1994. However, in this case, the aircraft at issue was registered in Mexico, not the United States, and was not subject to the United States regulations governing the registration of aircraft. Therefore, the UCC, as adopted in Missouri, applies to the transaction at issue. Of initial relevance is Section 400.9–103, which mandates that, in transactions in which the collateral is a mobile good, such as an airplane, the law in the jurisdiction in which the debtor is located governs the perfection of that security interest. Clearly, with respect to the perfection of JODA's lien, we must apply Mexican law because the debtor, Aerotaxis, is a Mexican entity.

JODA contends that its lien was perfected according to Mexican law. In support of their contention, JODA provided the trial court with an affidavit from Rene Cacheaux, a former law professor and practicing attorney in Mexico, who testified that JODA perfected its lien under Mexican law by taking possession of the jet and filing the security agreement between it and Aerotaxis with the Mexican Aviation Registry. There is no evidence before us that CAMI or Million Air claimed that JODA's lien was not perfected. Nor did the trial court address the issue in its orders. We find JODA had properly perfected its lien. Furthermore, because Skytech's lien was not properly perfected and Skytech had no right to repossession of the jet, we hold, as a matter of law, that JODA's lien had priority over Skytech's lien and that the trial court erred when it held otherwise.

Both Million Air and CAMI claim JODA is now estopped from arguing the priority of Skytech's lien because JODA paid the lien. We disagree.

The defense of estoppel requires a showing of the following three elements: (1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon; (2) action by the other party on the faith of the admission, statement or act; and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement or act. *Missouri Highway and Transp. Com'n v. Myers*, 785 S.W.2d 70, 73 (Mo. banc 1990). "The doctrine of equitable estoppel is not a favorite of the law and will not be applied lightly." *Farmland Industries, Inc. v. Bittner*, 920 S.W.2d 581, 583 (Mo.App. W.D.1996). It can only be used when each element clearly appears, and the burden of proof is upon the party asserting it to establish the essential facts by clear and satisfactory evidence. *Id.*

There is no evidence before this court that by paying off the lien JODA admitted Skytech had priority. Such payment was a separate transaction between JODA and a third party and reflects nothing more than JODA's desire to retake possession of the jet and avoid costly and prolonged litigation with Skytech. Neither CAMI nor Million Air can rely on such an unrelated transaction to preclude JODA's suit for the wrongful delivery of the jet. None of the elements essential to finding estoppel are present in this case, therefore defendants' estoppel argument fails.

Having examined the issue of priority, we must next determine whether there existed a bailment relationship between JODA and both defendants and whether defendants breached their respective bailment relationships. JODA claims there was an implied bailment between it and Million Air and an express bailment between it and CAMI.

*Implied Bailment*

JODA asserts the evidence established as a matter of law an implied bailment relationship between it and Million Air, due to the fact that Million Air had exclusive control over the physical movement of the jet. JODA further claims a breach of that bailment relationship since Million Air wrongfully released the jet to Skytech. We agree with JODA that the trial court's granting of summary judgment in favor of Million Air was in error. However, the trial court did not err in denying JODA's Motion for Summary Judgment.

 A bailment signifies a contract resulting from the delivery of goods by the bailor to the bailee on the condition that they be restored to the bailor according to the bailor's directions as soon as the purposes for which they were bailed are answered. *Seitz v. Lemay Bank & Trust Co.*, 959 S.W.2d 458, 461 (Mo.banc 1998). A contract for bailment may be written, oral, express or implied. *Joseph v. Mutual Garage Co.*, 270 S.W.2d 137, 141 (Mo. App.1954). The very nature of a bailment requires that there be a delivery by the bailor and an acceptance by the bailee of the subject matter of the bailment. *West County Internal Medicine, Inc. v. Domian Standard Service, Inc.*, 725 S.W.2d 116, 118 (Mo.App. E.D.1987). While an acceptance of goods sufficient to create a bailment may be implied, the law will not infer such an acceptance until there is something to show notice to or knowledge of the alleged bailee that the goods are in fact in his or her possession. 8A Am Jur 2d, *Bailments* Section 49. A bailment cannot arise when the reputed bailee does not know of the articles claimed to have been bailed to him or her, or does not know that they have been delivered to him or her. *Id.* "Absent such notice or knowledge, the requirement of acceptance by the bailee of the subject matter of the bailment is defeated, and no valid contract of bailment is created." *West County Internal Medicine, Inc. v. Domian Standard Service, Inc.*, 725 S.W.2d at 118. However, where one knowingly comes into possession of a chattel and exercises physical control over it, or where possession has been acquired accidentally, or for some purpose other than bailment, the law imposes on the recipient the duties and obligations of a bailee. 8A Am Jur 2d, *Bailments* Section 38.

 In this case, there is no evidence of an express bailment between JODA and Million Air. There was no contract between JODA and Million Air for the storage of the jet. Rather, the contract was between JODA and CAMI. However, JODA argues there existed an implied bailment relationship between it and Million Air, because Million Air had exclusive control of the movement of the jet while it was stored. Million Air argues that it never contracted with JODA nor did it agree with JODA to store the jet, therefore it never accepted delivery of the jet and could not be a bailee as to the jet. There is contested testimony in the record that several discussions took place between JODA and various employees of both Million Air and CAMI concerning special instructions for the storage of the jet. This testimony, when viewed in favor of JODA, establishes a material question of fact as to whether an implied bailment relationship existed between JODA and Million Air. Therefore, the trial court erred in granting summary judgment in favor of Million Air. Likewise, for the same reason, the trial court was correct in denying JODA's Motion for Summary Judgment. Thus, we reverse and remand the trial court's grant of summary judgment in favor of Million Air.

 Once a bailment relationship, express or implied, is established, it imposes on the bailee a duty to exercise ordinary care in dealing with the bailed property. *Lewis v. Lawless Homes, Inc.*, 984 S.W.2d 583, 586 (Mo.App. E.D.1999). Should the trial court decide there was a bailment relationship, JODA will next have to show that Million Air breached that duty. Million Air contends it did not breach its duty to exercise ordinary care in the storage of the jet. Million Air asserts it is the cus-

tom and practice of those engaged in the aircraft storage business to release aircraft to anyone who can identify the aircraft by its tail number, as the Skytech representative did in this case. Thus, Million Air claims it fulfilled its duty to act with ordinary care according to industry standards.

The issue of a bailee's exercise of due care is usually one of fact rather than law. *Temple v. McCaughen & Burr, Inc.*, 839 S.W.2d 322, 326 (Mo.App. E.D. 1992). Industry-wide practice or customs which are or should be known to both the bailor and bailee are impliedly incorporated into the bailment contract. 8A Am Jur 2d, *Bailments* Section 87. Evidence of industry custom is generally admissible to show that a bailee did not act negligently. *Institute of London Underwriters v. Eagle Boats, Ltd.*, 918 F.Supp. 297, 300 (E.D.Mo. 1996). "However, customs and usage evidence does not set the legal standard of care." *Id.* In fact, even if such evidence of custom and practice is unchallenged, a court may disregard it and find the custom fails to require conduct that rises to the level of ordinary care. *Id.*

Whether or not Million Air's practice of giving away aircraft to anyone who knows the tail number is industry custom and, likewise, whether JODA knew or had reason to know of such a custom are both questions of material fact which we remand to the trial court. However, as stated in *Institute of London Underwriters*, should the trial court find the existence of such a custom, it is not necessarily bound by that custom.

*Express Bailment*

JODA maintains the trial court further erred because there was an express bailment relationship between JODA and CAMI as a result of the contract between the two for the storage of the jet. The trial court granted Million Air's motion on the basis of priority of Skytech's lien and, therefore, did not reach the issue of an express bailment relationship between JODA and CAMI. However, we hold today, as discussed above, that Skytech's lien did not take priority over JODA's, there-

fore we must determine whether JODA and CAMI had an express bailment relationship.

A "bailment" signifies a contract resulting from the delivery of goods by the bailor to the bailee on the condition that they be restored to the bailor according to the bailor's directions as soon as the purposes for which they were bailed are answered. *Seitz v. Lemay Bank & Trust Co.*, supra. Generally, there can be no valid bailment without notice or knowledge of the bailee of the presence of the property. *West County Internal Medicine v. Domian Standard Service*, 725 S.W.2d 116, 118 (Mo.App. 1987).

The record before us clearly indicates that there was an express bailment relationship between CAMI and JODA. Gary Delgman, the president of CAMI, acknowledged in his deposition that the jet came to the facility on Memorial Day weekend of 1997. Delgman further acknowledged he had a telephone conversation on that same weekend with JODA partner Barry Stone regarding the possibility that some one might attempt to repossess the jet. During that conversation, Delgman told Stone he would store the jet in the back of the locked hangar and that Million Air would be given instructions not to move the jet without JODA or Delgman's express permission. Furthermore, CAMI billed JODA $2,000 for the storage of the jet during the month of June of 1997. This evidence clearly indicates that CAMI knowingly took possession of the jet for storage, thus creating an express bailment relationship.

CAMI has not cited, nor can we find, any evidence in the record that CAMI lacked notice of their own possession of the jet. We find this contention particularly specious in light of the aforementioned undisputed evidence that the jet was stored in the hangar leased by CAMI. Absent a factual dispute, we hold that there was an express bailment relationship between JODA and CAMI. However, as we hold above, the existence of an express bailment relationship between JODA and

CAMI only establishes CAMI's duty. Whether CAMI breached that duty is likewise a question of fact which we remand for trial.

*Damages*

JODA contends the trial court erred in granting summary judgment for defendants and in denying JODA's Motion for Summary Judgment on the basis that JODA did not sustain measurable damages. JODA claims it suffered $79,110.29 in damages due to expenses it incurred in regaining possession of the jet. The bulk of JODA's claimed damages, $64,954, was paid to Skytech to cover its mechanic's lien for the work done to the jet. Million Air and CAMI both argue, and the trial court agreed, that the $64,954 became part of the debt owed by Aerotaxis to JODA and that JODA settled that debt when it signed the Mutual Release and Covenant Not to Sue with Aerotaxis. Defendants point to JODA's loan ledger which lists the lien payment along with other expenses JODA incurred in servicing the loan. The simple fact that JODA listed the payment in the ledger cannot be taken as undisputed evidence that JODA recouped that payment from Aerotaxis, and thereby suffered no measurable damages.

Conversely, JODA claims the settlement did not reflect any payment JODA made on Skytech's lien. JODA claims that Aerotaxis never reimbursed it for the costs it incurred in repossessing the jet. In fact, JODA claims it still lost over $350,000 in the transaction because the jet sold for less than the amount of the entire loan made to Aerotaxis, a figure both defendants contest.

The existence of the claimed damages is a material question of fact which we are ill-equipped to answer. It is impossible for this court to ascertain the value of the jet, including depreciation, or for us to comment on the accounting practices of JODA based upon the record before us. Several material issues are contested, including the actual amount loaned by JODA to Aerotaxis. Therefore, we remand this issue to the trial court for a full determination.

In view of our disposition, JODA's final point on appeal need not be reached.

*CONCLUSION*

The trial court's order granting summary judgment in favor of CAMI and Million Air is reversed. We hold that an express bailment relationship existed between JODA and CAMI, Skytech's lien did not have priority over JODA's, and Skytech was not entitled to possession of the jet. We reverse and remand to the trial court for a full determination of the existence of an implied bailment relationship between JODA and Million Air and whether both Million Air and CAMI breached their duty of care. We further remand as to the issue of damages as against both defendants. We affirm the trial court's denial of JODA's Motion for Summary Judgement. Reversed and remanded in part; affirmed in part.

LAWRENCE G. CRAHAN, J., concurs.

RICHARD B. TEITELMAN, J., concurs.