## D.S. SIFERS CORPORATION,
### Appellant,

### v.

### Leo HALLAK, Paul Morris, Duren Sleyster, Kevin Sleyster and C.Y.A. Holding, L.L.C., Respondents.

#### No. WD 58295.

Missouri Court of Appeals,
Western District.

March 20, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 29, 2001.

Application for Transfer Denied
June 26, 2001.

David R. Schmitt, St. Joseph, for appellant.

Ronald D. Montieth, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., ULRICH and HOWARD, JJ.

BRECKENRIDGE, Judge.

D.S. Sifers Corporation appeals from the summary judgment entered by the trial court in favor of Leo Hallak, Paul L. Morris, Duren Sleyster, Kevin Sleyster and C.Y.A. Holdings, L.L.C., who are partners in BSB Investment Partnership. D.S. Sifers first contends that the trial court erred in entering summary judgment because BSB Partnership owed a duty of

care to D.S. Sifers to protect its property that was being stored on BSB Partnership's premises. Secondly, D.S. Sifers claims that once it established that damage to the property occurred due to negligence, the burden should have shifted to the defendants to demonstrate which of the two actually caused the negligence. Because D.S. Sifers cannot establish that the property was damaged while under BSB Partnership's control, summary judgment was proper with respect to the claim of implied bailment. Further, because D.S. Sifers has not made a *prima facie* case for general negligence nor provided a basis upon which the burden of proof should be shifted to BSB Partnership to prove that the damage did not occur while in their possession, summary judgment was also proper on its claim for general negligence.

### Factual and Procedural Background

This appeal arises out of the lease of storage space and damage to property stored therein. BSB Partnership owned a building in which it leased space to other individuals or entities. In October 1995, BSB Partnership leased space in the building to Rob McCune. Mr. McCune used the space for storage of his own property and also for storage of other people's property. D.S. Sifers entered into an oral agreement in which Mr. McCune agreed to store property for the corporation. The sublease occurred without BSB Partnership's knowledge. BSB Partnership was aware, however, that Mr. McCune was storing property belonging to other individuals. While D.S. Sifers alleged that the property consisted of a printing press, printing plates and associated equipment,

no inventory was provided to Mr. McCune upon delivery, nor did D.S. Sifers receive a receipt for the property.

In February 1997, BSB Partnership requested that Mr. McCune vacate the premises. When Mr. McCune complied with this request, he left the property belonging to D.S. Sifers on the premises and he failed to notify D.S. Sifers that he had vacated. While BSB Partnership was aware that property had been left behind, it claimed that it was unaware that the property was owned by D.S. Sifers.

When D.S. Sifers finally discovered in August 1997 that Mr. McCune had vacated the premises, it went to the premises and found that its property had been damaged and some of it was missing. When D.S. Sifers contacted BSB Partnership, BSB Partnership denied any knowledge concerning the condition of D.S. Sifers' property. BSB Partnership requested, and D.S. Sifers, paid $350 for rent accrued following Mr. McCune's vacating the premises. It also requested that D.S. Sifers provide a release from Mr. McCune before BSB Partnership would release any of the property.

D.S. Sifers filed suit against BSB Partnership, alleging breach of bailment contract and general negligence.[1] In alleging breach of bailment contract, D.S. Sifers claimed that when Mr. McCune moved its equipment from and vacated BSB Partnership's premises, BSB Partnership took possession and control of D.S. Sifers' property. D.S. Sifers claimed that BSB Partnership failed to return certain property and other property was returned damaged. Concerning the general negligence claim,

---

1. D.S. Sifers also included in its petition a count against Mr. McCune for negligence. This claim was dismissed without prejudice by D.S. Sifers prior to filing this appeal and Mr. McCune is not a party to this appeal.

Mr. McCune was also a third-party defendant in this action, but BSB Partnership also dismissed without prejudice their claims against him following the court's entry of summary judgment.

D.S. Sifers asserted that "dirt, cement grit, cement dust and dust" had collected on one of its printers and some of its property had disappeared, neither of which would normally occur when an entity storing property utilizes due care.

BSB Partnership filed their answer denying the allegations that it took possession and control of or was storing D.S. Sifers' property. Furthermore, BSB Partnership denied that it was responsible for any damage or loss to D.S. Sifers' property.

Thereafter, BSB Partnership filed a motion for summary judgment in which it claimed that under Missouri law, D.S. Sifers could not establish the essential elements of its bailment and negligence claims against BSB Partnership. In their suggestions in support, BSB Partnership argued that there could be no bailment contract between BSB Partnership and D.S. Sifers because the property was not delivered to BSB Partnership. The agreement that occurred between D.S. Sifers and Mr. McCune was without BSB Partnership's knowledge and the property would have been delivered to Mr. McCune, if anyone. Furthermore, it claimed that there was no acceptance of the property by BSB Partnership, nor was there notice or knowledge of the subject matter of the purported bailment. Finally, BSB Partnership claimed that even if there was a proper bailment contract, there was no evidence that the property was lost or damaged while under BSB Partnership's alleged possession or control.

With respect to general negligence, BSB Partnership argued that the theory of negligence presented by D.S. Sifers was *res ipsa loquitur*. Because D.S. Sifers could not show that the damage occurred after Mr. McCune vacated the premises, BSB Partnership claimed that this doctrine does not apply.

This appeal follows the trial court's entry of summary judgment in favor of BSB Partnership.

## Standard of Review

This court will review an appeal from a trial court's entry of summary judgment *de novo*, viewing "the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. The trial court's decision will be affirmed if "there are no genuine issues of material fact and ... the movant is entitled to judgment as a matter of law." *ITT Commercial*, 854 S.W.2d at 377. Yet, this court "need not defer to the trial court's order granting summary judgment." *Id.* at 376. To be entitled to summary judgment, the movant must "show a right to judgment flowing from facts about which there is no genuine dispute." *Id.* at 378. As the "defending party," BSB Partnership must show one of the following:

> (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381.

■ "In a bailment action, three theories may be asserted by the bailor—general negligence, specific negligence, and breach of bailment contract." *C.V. Sohn, Inc. v. J.W. Milligan, Inc.*, 741 S.W.2d 60, 63 (Mo.App.1987). D.S. Sifers' third

amended petition contained allegations of both breach of bailment contract and general negligence by BSB Partnership.

## Facts Alleged Do Not Support Implied Bailment Theory

In its first point, D.S. Sifers claims that the trial court erred in entering summary judgment in favor of BSB Partnership concerning its theory of breach of bailment contract. D.S. Sifers alleges that when Mr. McCune vacated the premises leaving behind its property and BSB Partnership knew the property remained on the premises, a duty of care arose requiring BSB Partnership to exercise ordinary care with regard to the property. When BSB Partnership took no steps to protect the property or to prevent it from being damaged, D.S. Sifers argues that BSB Partnership breached their duty. D.S. Sifers concedes that the facts do not support an actual bailment, but argues that this case should be decided under the theory of constructive bailment.

BSB Partnership argues that no bailment existed because of the following reasons: (1) there was no valid contract between D.S. Sifers and BSB Partnership; (2) there was no delivery because BSB Partnership never agreed to store, take possession, or control D.S. Sifers' property; (3) there was no acceptance by BSB Partnership when the property was moved onto the premises or when Mr. McCune vacated the premises; and (4) there was no acceptance because BSB Partnership did not have notice or knowledge of the subject matter of the purported bailment. Furthermore, BSB Partnership claims that there can be no "constructive bailment" because the subject matter of the bailment must be identifiable to the parties. For example, D.S. Sifers claimed that certain property is missing, yet BSB Partnership argues that there is no evidence, apart from D.S. Sifer's testimony, that the missing property was ever on the premises. Likewise, BSB Partnership claims that D.S. Sifers cannot prove the condition of the property at the time of the alleged delivery, since D.S. Sifers concedes that there is no evidence in the record with regard to the condition of its property at the time Mr. McCune vacated the premises. Thus, it is impossible to determine whether the property was returned in the same condition received. Finally, BSB Partnership argues that there is no evidence to establish a causal connection between the purported loss and BSB Partnership's alleged negligence.

■■■ "A contract for bailment may be written, oral, express or implied." *Stone v. Crown Diversified Indus. Corp.*, 9 S.W.3d 659, 669 (Mo.App.1999). For a bailment contract to exist, there must be delivery by the bailor and acceptance by the bailee of the subject matter of the bailment. *Id.* Acceptance by the bailee may be implied, but only where "there is something to show notice to or knowledge of the alleged bailee that the goods are in fact in his or her possession." *Id.* Without notice or knowledge, there can be no acceptance by the bailee, and thus, no valid bailment contract. *Id.* "A bailment contract may arise by implication of law ... where one comes into possession of a chattel and exercises physical control over it, or where possession has been acquired accidentally, or for some purpose other than bailment[.]" 8A AM.JUR.2D, *Bailments* § 38 (1997). "Where the bailor pleads and presents evidence of breach of the bailment contract by the bailee failing to return the article in an undamaged condition, the burden of proof is on the bailee to plead and provide due care on its part[.]" *Temple v. McCaughen & Burr, Inc.*, 839 S.W.2d 322, 326 (Mo.App.1992).

In order to recover against BSB Partnership on an implied bailment theory, this court must first find that an implied bailment relationship was created between D.S. Sifers and BSB Partnership when Mr. McCune vacated the premises.[2] Once this is established, the inquiry turns to whether a *prima facie* case is established. As both D.S. Sifers and BSB Partnership point out, there has been very little discussion by Missouri courts concerning implied bailments. In *Stone*, 9 S.W.3d at 669, however, the Eastern District did address the question of whether an implied bailment existed and reversed the trial court's entry of summary judgment where there were material questions of fact as to whether such a relationship existed. In that case, the plaintiffs, JODA, took possession of a jet as collateral for a loan. *Id.* at 662. The jet was to be stored until the time that the loan was repaid. *Id.* JODA contracted with Corporate Aircraft Management, Inc. (CAMI), to store the jet in a hanger in St. Louis owned by Million Air. *Id.* CAMI leased the space in which the jet would be stored from Million Air. *Id.* Both CAMI and Million Air were in the business of storing and maintaining aircraft. *Id.* An employee of Million Air released the jet to an individual who was accompanied by a police officer based upon the individual's knowledge of the tail number. *Id.* at 663. It was later determined that the individual was a representative of an aircraft repair company who had repossessed the jet to pay off an unrecorded and unregistered mechanic's lien. *Id.* JODA filed an action against Million Air alleging, *inter alia*, that an implied bailment existed between JODA and Million Air "due to the fact that Million Air had exclusive control over the physical movement of the jet." *Id.* at 669. JODA claimed that Million Air breached the bailment relationship by wrongfully releasing the jet. *Id.*

Million Air argued that "it never contracted with JODA nor did it agree with JODA to store the jet, therefore it never accepted delivery of the jet and could not be a bailee as to the jet." *Id.* In finding that "a material question of fact as to whether an implied bailment relationship existed[,]" the court noted that "there [was] contested testimony in the record that several discussions took place between JODA and various employees of both Million Air and CAMI concerning special instructions for the storage of the jet." *Id.*

Here, D.S. Sifers entered into an oral agreement with Mr. McCune for the rental of space in which to store equipment. Following the vacating of the premises by Mr. McCune, certain property of D.S. Sifers remained in the space. Arguably, this type of situation could give rise to an implied bailment. If BSB Partnership became aware that it was in possession of property owned by D.S. Sifers following Mr. McCune's vacating the premises, then a bailment contract could arise by implication of law. *See* 8A AM.JUR.2D, *Bailments* § 38 (1997). Deposition testimony contained in the record of Leo Hallack, a partner of BSB Partnership, indicated that he was aware that property remained after Mr. McCune vacated the premises. Furthermore, there is evidence that before D.S. Sifers was allowed to take the property that remained, Mr. Hallack requested a release from Mr. McCune and that D.S. Sifers was required to pay past rent to BSB Partnership for rental following the time in which Mr. McCune vacated the premises.

---

**2.** D.S. Sifers acknowledges that no express bailment contract existed between it and BSB Partnership.

■ Assuming that this is sufficient to establish the knowledge and control needed for a bailment contract, the inquiry turns to whether D.S. Sifers has established a *prima facie* case entitling it to submission of the issue to a jury. *See* 8A AM.JUR.2D *Bailments* § 240 (1997); *Temple*, 839 S.W.2d at 326. This requires the bailor, D.S. Sifers, to show breach of the bailment contract. *See Temple*, 839 S.W.2d at 326. D.S. Sifers alleged that BSB Investments failed to return some property and returned other property in a damaged condition. In a traditional bailment relationship, this would be sufficient to establish a breach and the burden would shift to BSB Partnership to plead or prove due care. *See id.* The difficulty in this case is that during the time in which the property was stored, two different individuals or entities were involved. In essence, this could be characterized as subsequent or successive bailments, the implied bailment relationship between BSB Partnership and D.S. Sifers following the express bailment relationship between Mr. McCune and D.S. Sifers. D.S. Sifers acknowledges in its brief that it "cannot identify whether the property sustained its damage while it was in [Mr.] McCune's possession or in [BSB Partnership's] possession." Unlike in *Stone*, 9 S.W.3d at 663, where it was clear that an employee of Million Air released the plane, D.S. Sifers cannot show that the property was returned in a condition other than what it was received in by BSB Partnership or that the damage or loss occurred while in BSB Partnership's possession. Thus, it cannot establish a breach and has not made its *prima facie* case. *See* 8A AM. JUR.2D *Bailments* §§ 238, 240 and 241 (1997).

■ As indicated above, in a normal bailment situation, once a bailor establishes that a bailment relationship or contract exists and has been breached, the burden shifts to the bailee to prove that he exercised due care. *Temple*, 839 S.W.2d at 326. Thus, a rebuttable presumption arises that the bailee was negligent. *See State Farm Fire and Cas. Co. v. Emde*, 706 S.W.2d 543, 547 (Mo.App.1986). This presumption exists, however, where the bailee has "sole, actual, and exclusive physical possession of the goods[.]" 8A AM. JUR.2D *Bailments* § 233 (1997). The reason for this presumption and the shift of burden is that the bailor generally does not know the reason for the bailee's failure to return undamaged goods. *See* RAY BROWN, THE LAW OF PERSONAL PROPERTY § 11.8 (3d ed.1975). "To require the bailor to prove that the failure to return was due to the negligence of the bailee might impose on him a task impossible of accomplishment, and effectually deny recovery altogether." *Id.* Here, D.S. Sifers' property was not in the exclusive possession of BSB Partnership during the time in which the property was stored. Thus, the presumption of negligence does not arise to shift the burden to BSB Partnership to establish due care on their part. D.S. Sifers must provide some evidence that the damage occurred while in BSB Partnership's control. Because D.S. Sifers cannot establish this element, its claim against BSB Partnership based upon an implied bailment contract must fail and summary judgment in favor of BSB Partnership was proper.

D.S. Sifers' first point is denied.

## General Negligence

■ In its next point, D.S. Sifers alleges that the trial court erred in granting the motion for summary judgment because when it established that damage to its property occurred, the burden should have been shifted to BSB Partnership to demonstrate that the damage did not occur while in its possession under a burden-shifting or alternative theory of liability.

Under the theory of general negligence with respect to bailed property, "[t]he bailee has the duty to exercise ordinary care with respect to the bailed article." *Lewis v. Lawless Homes, Inc.*, 984 S.W.2d 583, 586 (Mo.App.1999). Under this theory, the bailee has the "burden of going forward with the evidence . . ., while the burden of proof remains with the bailor." *Temple*, 839 S.W.2d at 326. Once the bailor establishes loss through either damage to property or failure to return, "an inference of negligence under the doctrine of *res ipsa loquitur*" arises. *Lewis*, 984 S.W.2d at 586. "*Res ipsa loquitur* is a rule of evidence that allows the jury to infer from circumstantial evidence that the plaintiff's injury resulted from some negligent act of the defendant without requiring the plaintiff to prove defendant's specific negligence." *Larison v. Public Water Supply Dist. No. 1 of Andrew County*, 998 S.W.2d 192, 197 (Mo.App.1999). To succeed under this theory, the plaintiff must show: "(1) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (2) the instrumentality involved was under the management and control of the defendant; and (3) the defendant possesses superior knowledge or means of information as to the cause of the occurrence." *Id.* This presumption is similar in proof and reason to that which arises under breach of a bailment contract described above. Since BSB Partnership was not in exclusive control of the property during the time of storage, this doctrine would not apply. *See id.* at 198.

Because this doctrine is inapplicable to the facts of this case and an inference of negligence cannot be drawn to shift the burden to BSB Partnership, D.S. Sifers asks this court to adopt the burden shifting or alternative theory of liability. This theory is found in the RESTATEMENT (SECOND) OF TORTS § 433B(3), and is generally based upon *Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1 (1948). RESTATEMENT (SECOND) OF TORTS § 433B(3) states that "[w]here the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm."

The Supreme Court in *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 242, 244 (Mo. banc 1984), considered the application of "alternative liability" in the context of a pharmaceutical product liability action concerning the use of diethylstilbestrol (DES), recognizing that the theory "ha[d] not achieved full acceptance in Missouri." The Court noted that although the theory "does not require that defendants be in a better position to identify the source of the harm[,] . . . this is important to application of the theory." *Id.* at 244. The Court specifically rejected application of alternative theory in *Zafft* because "all possible tortfeasors [were] not before the court and the actual wrongdoers [might have] escape[d] liability." *Id.* In rejecting each of the different theories appellants proposed in that case, none of which had been adopted in Missouri and all of which "either relax[ed] or dispense[d] with the element of causation[,]" the Court determined that plaintiffs had failed to "persuade the Court to abandon the Missouri tort law which requires that it establish a causal relationship between the defendants and the injury-producing agent as a precondition to maintenance of their causes of action." *Id.* at 244, 247.

D.S. Sifers has provided no authority or sufficient basis upon which this court should adopt the alternative liability theory in this case. Furthermore, in those jurisdictions that have adopted this theory, it is incumbent upon the plaintiff to show that "each defendant acted in a tortious

manner." *See Clift v. Nelson,* 25 Wash. App. 607, 608 P.2d 647, 649 (1980). D.S. Sifers alleges in its brief that it "can demonstrate that [BSB Partnership] acted tortiously by failing to take steps to secure its property once Rob McCune vacated the premises[.]" Yet D.S. Sifers admits that it does not know whether the damage had occurred prior to Mr. McCune's vacating the premises. Furthermore, D.S. Sifers has provided no authority supporting its position that BSB Partnership had an affirmative duty to take affirmative steps to secure the property. *See* RAY BROWN, *supra* at § 12.2 (stating that "[t]he duty of a bailee may be an arduous one and the courts quite properly shrink from thrusting [a duty to take affirmative stops to protect the person or property of another] upon him without his consent"). D.S. Sifers' mere allegation that BSB Partnership failed to take steps to secure its property is insufficient to show or infer that the actions of BSB Partnership were negligent. *See Zands v. Nelson,* 797 F.Supp. 805, 819 (S.D.Cal.1992).

■ The theory of alternative liability advanced by D.S. Sifers has no application to this case. The doctrine of *res ipsa loquitur,* used when general negligence is the theory of recovery for bailed items, allows negligence to be inferred merely from proof of loss. *See Lewis,* 984 S.W.2d at 586. This is so because under the *res ipsa* doctrine, the bailee has exclusive control of the bailed property. *See Larison,* 998 S.W.2d at 198. Once loss is established, the burden shifts to the bailee "to defeat the inference of negligence[.]" *Temple,* 839 S.W.2d at 326. The theory of alternative liability "cannot be used to prove the negligent conduct, but only to prove causation." *Zands,* 797 F.Supp. at 819. Here, D.S. Sifers' argument would require this court to assume that BSB Partnership was negligent. Speculation as to the tortious conduct of BSB Partnership cannot be the basis for imposing liability

based upon the theory of alternative liability. *See Clift,* 608 P.2d at 649.

In rejecting plaintiff's request to relax the causation requirements, the Supreme Court, in *Zafft,* 676 S.W.2d at 246, stated that "Missouri law does not guarantee relief to every deserving plaintiff." D.S. Sifers has failed to provide this court with sufficient justification "to abandon the Missouri tort law which requires that it establish a causal relationship between the defendants and the injury-producing agent as a precondition to maintenance of their cause[ ] of action." *Zafft,* 676 S.W.2d at 247. Having failed to establish a *prima facie* case of general negligence with respect to BSB Partnership, the trial court's entry of summary judgment was proper. D.S. Sifers' second point is denied.

The judgment of the trial court is affirmed.

All concur.