# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2209

_____

| | | |
|---|---|---|
| Immigration Law Group, LLP; <br> Visa Law Group, L.L.C., | * <br> * <br> * | |
| Appellants, | * <br> * | |
| v. | * <br> * <br> * | Appeal from the United States <br> District Court for the <br> Eastern District of Missouri. |
| Danna McKitrick, P.C.; Danna <br> Stockenberg, P.C.; Danna McNary <br> Stockenberg and Soraghan, P.C.; <br> Danna Soraghan Stockenberg and <br> McNary, P.C.; Dana Soraghan <br> Stockenberg and Shaw, P.C.; Danna <br> and Shaw, P.C.; Klamer Danna and <br> Shaw, P.C., | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | |
| Appellees. | * | |

_____

Submitted: December 14, 2006
Filed: April 4, 2007

_____

Before WOLLMAN, RILEY, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The Immigration Law Group (ILG) alleges that Danna McKitrick, P.C. (Danna) breached its immigration services contract with various former clients now represented by ILG by refusing to transfer unearned retainer fees to ILG as requested

by the clients.  After a bench trial, the district court[1] held, *inter alia*, that ILG was equitably estopped from pursuing its claims against Danna and that no contract had been breached.  ILG appeals from the district court's equitable estoppel and breach of contract rulings.  We affirm.

## I. Background

American Immigration Services, Inc. (AIS), a for-profit corporation, connected clients with Danna for the provision of legal services associated with an immigrant investor visa program established by AIS.  The program allowed foreign investors to obtain permanent lawful United States resident status under the Immigration and Naturalization Services' (INS) EB-5 classification.  Gene McNary, who was a partner at Danna, the head of its immigration practice, a member of its executive committee, and a former commissioner of the INS, had a relationship with AIS and secured the retainer agreements from the various clients for the legal work.  The legal work involved three steps: (a) preparing and filing a "Petition for Immigrant Investor" form (I-526) with the INS; (b) attending a visa interview resulting in the issuance of a two-year conditional green card; and (c) preparing and filing a "Petition to Remove Two-Year Condition with the INS" (I-829).[2]

Danna entered into different retainer agreements with different clients.[3]  The various differences resulted from McNary's revisions of a basic AIS contract.  McNary considered the clients' fees earned upon issuance of the conditional visa –

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

[2]For concision, we hereinafter refer to these steps as step (a), step (b), and step (c), respectively.

[3]The district court's judgment addressed claims pertaining to the retainer fees of 106 client contracts.  ILG appeals the district court's ruling on seven of these.

step (b) – for all of the agreements, although not all of the agreements explicitly specify when fees are deemed earned. Accordingly, once the conditional visas were issued, McNary had the associated fees transferred out of client trust accounts and into Danna's general operating account. From there, even though the clients had not yet become eligible for the removal of conditions under step (c), the fees were treated as revenue and distributed among the partnership – with a significant portion going to McNary under his compensation agreement.

McNary left Danna and joined ILG on March 31, 1998. Prior to his departure, David Morris, a partner at ILG, wrote a letter to McNary in which he acknowledged that the legal retainer fees collected by Danna were eligible to be deemed earned as of the completion of step (b). In April 1998, after McNary had joined ILG, McNary and Morris met with Danna partners to discuss the transfer of the EB-5 program's clients to McNary's new firm. The Danna partners "made it clear that there was not going to be any money" turned over to McNary from the retainer fees paid by the clients. In the face of this knowledge, McNary and his new firm induced the clients to terminate their relationship with Danna. ILG agreed to complete the remaining legal services without charge, whereupon the clients sent letters to Danna stating that they were assigning to ILG their rights to any remaining legal retainer fees paid to Danna that had not yet been earned and instructing Danna to transfer the money and relevant case files to ILG. Because Danna considered all of the fees earned and had already distributed them from its general operating account, Danna refused to remit any money to ILG. ILG, nevertheless, completed the step (c) work for the clients. One client subsequently sent a letter to the Missouri Bar Association alleging that Danna had violated the Rules of Professional Responsibility by treating the fees as earned prior to the completion of step (c). The Chief Disciplinary Counsel informed the complaining client that his "investigation does not establish probable cause to believe that [there had been any violation of] the Rules of Professional Conduct."

ILG brought this action, seeking remedies under breach of contract and quantum meruit theories. Danna asserted an equitable estoppel defense and also asserted that the statute of limitations had run on the claims. As stated above, the district court held, *inter alia*, that ILG was equitably estopped from asserting its claims.[4]

## II. Discussion

We review a district court's factual findings for clear error and its legal conclusions *de novo*. Tamko Roofing Prods., Inc. v. Smith Eng'g Co., 450 F.3d 822, 827 (8th Cir. 2006). We apply Missouri law in this diversity action. Lindsay v. Safeco Ins. Co. of Am., 447 F.3d 615, 617 (8th Cir. 2006). The doctrine of equitable estoppel prevents a party from taking inequitable advantage of a situation it caused. Weiss v. Rojanasathit, 975 S.W.2d 113, 120 (Mo. 1998) (superseded by statute on other grounds). An equitable estoppel defense requires a showing of three elements: (1) an admission, statement, or act inconsistent with the claim afterward asserted or sued upon; (2) action by the other party on the faith of the admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate the admission, statement, or act. Stone v. Crown Diversified Indus. Corp., 9 S.W.3d 659, 668 (Mo. Ct. App. 1999) (citing Missouri Highway & Transp. Comm'n v. Myers, 785 S.W.2d 70, 73 (Mo. 1990)).

---

[4]It also held, in the alternative, that for all but two of the contracts, the statute of limitations had either lapsed or Danna had earned its retainer and had not breached the contracts. With respect to the remaining two contracts, the court held that ILG could not recover on the contracts because ILG had introduced evidence suggesting that it had not completed the step (c) work for the contracts' respective clients, despite a joint stipulation between the parties that ILG had, indeed, completed the work.

## A. Equitable Estoppel

In regard to the first element, ILG does not contest that McNary acted inconsistently with the claim in this suit by treating the clients' funds as fully earned upon the issuance of a conditional visa when he transferred the fees out of client trust accounts.

Instead, ILG contends that the second element is not satisfied because Danna failed to introduce sufficient evidence demonstrating its reliance on McNary's action and belief. It points out that McNary never shared his interpretation of the agreements with anyone at Danna. It further argues that because Danna knew it would incur additional costs completing step (c) for each of McNary's clients, it could not have justifiably relied on McNary's conclusion. Additionally, it suggests that if Danna relied on McNary's act of transferring the fees to the firm's operating account, such reliance was misplaced because Danna had equivalent access to the agreements and could have made its own determination as to when the fees were earned. We find these contentions unpersuasive.

First, removing the fees from the client trust account demonstrated McNary's belief that the fees were earned, even though he never mentioned his opinion on the matter to anyone at Danna. The firm relied on the propriety of McNary's shifting of the fees to the firm's operating account when it thereafter distributed the operating account funds to it partners. See Stone, 9 S.W.3d at 668 (noting that an action may be relied upon for equitable estoppel purposes).

Second, the mere fact that Danna knew potentially costly step (c) work remained does not render its reliance on McNary's assessment unreasonable. After all, as ILG concedes, fourteen of the retainer agreements explicitly state that the fees would be deemed earned upon completion of step (b) even though Danna was obliged to complete step (c). Although many contracts were silent on the matter, in these

circumstances it was not unreasonable for Danna to rely on McNary's conclusion that the other contracts likewise permitted Danna to deem fees earned after the completion of step (b).

Third, Danna's independent access to the text of the agreements does not render its reliance any less reasonable in this case. ILG contends that we should adhere to a proposition stated in Farmland Industries, Inc. v. Bittner, 920 S.W.2d 581, 583 (Mo. Ct. App. 1996), that "one cannot set up another's act or conduct as the ground of an estoppel when [one] knew or had the same means of knowledge as the other to the truth." ILG's reliance on Bittner is misplaced. Unlike the situation in Bittner, in which the party seeking estoppel failed to request and adequately review an available agreement that would have clearly indicated key information contrary to what was relied upon, many of the retainer agreements here are not models of clarity and thus necessitated and justified Danna's reliance on McNary's opinion. As the attorney of record who selected or modified the relevant agreements and who, even if not in direct contact with the clients, was the Danna representative that worked with AIS in securing the clients' consent, McNary was the closest thing Danna had to an authority for the purpose of construing the agreements' provisions based on the intentions of their signatories. See Burrus v. HBE Corp., 211 S.W.3d 613, 616-17 (Mo. Ct. App. 2006) ("'[t]he cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention'" (alteration in original) (quoting J. E. Hathman, Inc. v. Sigma Alpha Epsilon Club, 491 S.W.2d 261, 264 (Mo. 1973))). Accordingly, for the above reasons, we do not consider the district court's finding that Danna justifiably relied on McNary's action clearly erroneous.

Regarding the last equitable estoppel element, Danna would suffer damages had the district court allowed McNary and ILG to contradict or repudiate McNary's prior acts because Danna would have to pay ILG (and, thus, McNary) a sum of money that included the sizeable sum already disbursed to McNary. Accordingly, the district court's finding on the damage element was not clearly erroneous.

-6-

## B. The Nexus Between ILG and McNary

Finally, ILG submits that even if the facts discussed above support equitable estoppel as to McNary, ILG itself cannot be equitably estopped by McNary's inconsistent acts because McNary is not a plaintiff in this action and was not an ILG partner when he originally acted. This distinction is of no consequence here. It would be inequitable to disassociate the respective roles of ILG and McNary in inducing and maintaining Danna's reliance on McNary's conclusion. David Morris, acting in the capacity of an ILG principal, sent a letter to McNary while McNary was still a Danna partner, seeking to work out the details for transferring the clients to ILG. In this letter, Morris indicated that ILG considered the retainers earned by Danna.[5] Because ILG's stated position in its correspondence implied that it would not be pursuing the money already earned and distributed to Danna partners after ILG took on the clients, McNary had no obligation in his role as a Danna fiduciary to take precautionary steps that would have insulated Danna from potentially damaging liability resulting from his imminent departure and transfer of clients to ILG. Additionally, both McNary and ILG were well aware of the disposition of the fees when ILG agreed to take on McNary's clients. ILG completed the step (c) work even after the Danna partnership had unequivocally indicated to ILG that it would remit no fees even should ILG do the work. In light of the extent to which ILG's and McNary's combined and knowing actions created the potential liability underpinning this suit, and given ILG's decision to complete the work while knowing full well that Danna would forward no fees, ILG cannot disassociate its own involvement from McNary's.

---

[5]"As stated in the standard retainer agreement, legal fees are only eligible to be deemed as 'earned' AFTER initial conditional visa issuance. . . . According to the records you have provided our office, and those provided by AIS, . . . [f]or the above stated 200 cases, it is our understanding that [the] legal retainer fees were eligible to be deemed as 'earned' in a manner identified in the standard 'Retainer Agreement.'" (Appellant's App. at 362).

-7-

Because equitable estoppel bars its claims, we need not consider ILG's breach of contract arguments.  The judgment is affirmed.

_____